COUNTY OF CAMERON, Petitioner,

v.

Charlene Mills BROWN, individually, Clifton Linwood Brown, individually and as legal representatives of The Estate of Nolan Barrett Brown, deceased, and Jeff Farrington, Respondents.

No. 00–1020.

Supreme Court of Texas.

Argued Oct. 3, 2001.

Decided May 23, 2002.

Rehearing Denied Aug. 22, 2002.

George Christian Kraehe, Willette & Guerra, Brownsville, for petitioner.

Brian L. Jensen, Jensen Rosen & Steinberg, Houston, David T. Bright, Watts & Heard, Corpus Christi, Joseph Prestia, Prestia & Ornelas, Edinburg, for respondent.

Justice O'NEILL delivered the opinion of the Court, in which Chief Justice PHILLIPS, Justice ENOCH, Justice BAKER, Justice HANKINSON, and Justice RODRIGUEZ joined.

In this wrongful-death action, plaintiffs claim that a failed block of lights at the end of an elevated and curving causeway, with narrow shoulders and limited access, suddenly and unexpectedly plunged motorists into darkness and constituted a premises defect for which the Texas Tort Claims Act waives governmental immunity. The trial court ruled that the plaintiffs' pleadings fail to state a claim under the Act, and granted the defendants'·pleas to the jurisdiction. The court of appeals reversed, holding that the pleadings and evidence established a premises defect for which immunity was waived. 80 S.W.3d 594. We must decide whether the plaintiffs' pleadings, together with pertinent jurisdictional evidence, are sufficient to raise a premises-defect claim within the Act's immunity waiver.

The defendants argue that the failed lighting cannot under any circumstances constitute a premises defect because the resulting darkness was open and obvious, and not an unreasonably dangerous condition. But whether or not that ultimately proves to be the case, we hold that the pleadings and jurisdictional evidence do not affirmatively negate the existence of an unreasonably dangerous condition. Thus, the trial court should not have dismissed the plaintiffs' claims on this basis. The plaintiffs' pleadings do fail, however, to allege another necessary premises-defect element—that the plaintiffs did not actually know of the dangerous condition. Because the plaintiffs must be afforded an opportunity to amend to remedy this omission, we affirm the court of appeals' judgment reversing and remanding the case to the trial court.

## I. Background

·This case arises from an auto accident that occurred on the Queen Isabella Causeway, which is the only bridge con-

necting South Padre Island to the Texas mainland. Nolan Brown was crossing the causeway at about 3:00 a.m., traveling east toward South Padre, when he lost control of his truck. Brown's truck struck the concrete median that separates the two east-bound lanes from the two west-bound lanes, skidded, and turned over on its side. When it came to rest, Brown's passenger exited the vehicle through the sunroof. While Brown was attempting the same escape, an oncoming car driven by Hector Mucio Martinez crashed into Brown's truck. Brown died at the scene.

The record indicates that the causeway curves, has narrow shoulders, and rises at least 85 feet above the bay. Once drivers enter the causeway, a concrete median prevents them from turning around. When the accident in this case occurred, a block of streetlights on the causeway's eastern section was not functioning. The first part of the bridge was illuminated for traffic heading toward South Padre Island, but there was no illumination at the accidents' scene.

The State owns the causeway and its streetlight system. However, Cameron County assumed certain maintenance responsibilities over the causeway's streetlight system under an agreement with the Texas Department of Transportation ("TxDOT").[1] Correspondence between TxDOT and the County shows that maintaining the causeway's streetlights had been a problem since at least 1995. In November of that year, Kenneth Conway, a county park-system director, wrote to TxDOT's district engineer that thirty causeway streetlights were not functioning and presented a "serious safety hazard." In an April 1996 letter to TxDOT, Conway wrote that "inconsistent lighting on the causeway presents a safety hazard to the traveling public, particularly motorists who may be stranded in poorly lit sections." By August 1996, over thirty streetlights had failed, and the record indicates that at least that many were not functioning a month later when the accidents occurred.

Brown's survivors sued TxDOT, the County, the contractor the County hired to repair the streetlights, and Martinez. The plaintiffs alleged that Brown was stranded in a poorly lit section of the causeway when he was fatally injured, and that defective wiring caused the streetlights to fail, creating an unreasonably dangerous condition. They alleged that the causeway's condition constituted a premises defect, a special defect, or a misuse of personal property, for which the Tort Claims Act waives governmental immunity. Brown's passenger intervened to seek recovery for his own injuries.

TxDOT and the County filed special exceptions and pleas to the jurisdiction, arguing that the plaintiffs' allegations failed to state claims within the Act's sovereign-immunity waiver. Specifically, the defendants argued that providing roadway illumination is a discretionary function, so that they owed no duty to ensure illumination on the causeway. Defendants further argued that there was no duty to warn motorists of the failed lighting because the defective condition, which they describe as "darkness," was open and obvious, and not an unreasonably dangerous condition as a matter of law.

In response, the plaintiffs acknowledged that the defendants had no initial duty to illuminate the causeway, but claimed that the decision to install streetlights gave rise to a nondiscretionary duty to maintain

---

1. Among themselves, TxDOT and the County disputed their respective responsibilities under the maintenance agreement. The lower courts did not consider this issue, nor do the parties raise it here.

them. Plaintiffs further responded that, because the causeway entrance was illuminated, the sudden darkness from the block of failed lighting came upon drivers unexpectedly, thus leaving the question of the condition's open and obvious nature for the jury to consider.

After an evidentiary hearing, and without ruling on the defendants' special exceptions, the trial court granted the defendants' jurisdictional pleas, dismissed the claims against them, and severed them from the underlying claims against the contractor and Martinez. The court of appeals reversed the trial court's judgment, holding that (1) maintaining the causeway's streetlights was not a discretionary function exempt from the Tort Claims Act's immunity waiver, and (2) the plaintiffs' allegations and the pertinent jurisdictional evidence were sufficient to raise a premises-defect claim under the Act. 80 S.W.3d 594. We granted review to consider whether the plaintiffs' claims fall within the Tort Claims Act's sovereign-immunity waiver.

## II. The Tort Claims Act

■ The State, its agencies, and subdivisions, such as counties, generally enjoy sovereign immunity from tort liability unless immunity has been waived. *See* TEX. CIV. PRAC. & REM.CODE §§ 101.001(3)(A)–(B), 101.025; *Texas Dep't of Transp. v. Able*, 35 S.W.3d 608, 611 (Tex.2000). The Tort ·Claims Act expressly waives sovereign immunity in three general areas: "'use of publicly owned automobiles, premises defects, and injuries arising out of conditions or use of property.'"[2] *Able*, 35 S.W.3d at 611 (quoting *Lowe v. Texas*

*Tech Univ.*, 540 S.W.2d 297, 298 (Tex. 1976)). But the Act does not waive immunity for discretionary decisions, such as whether and what type of safety features to provide. *See* TEX. CIV. PRAC. & REM.CODE § 101.056; *State v. San Miguel*, 2 S.W.3d 249, 251 (Tex.1999).

■ The Act provides that a governmental unit is liable for injury and death caused by a condition of real property "if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM.CODE § 101.021(2). With respect to ordinary premises defects, however, the Act specifically limits the governmental duty owed to a claimant to "the duty that a private person owes to a licensee on private property." TEX. CIV. PRAC. & REM.CODE § 101.022(a). Thus, a governmental unit may be liable for an ordinary premises defect only if a private person would be liable to a licensee under the same circumstances.

■ A licensee asserting a premises-defect claim generally must show, first, that the defendant possessed—that is, owned, occupied, or controlled—the premises where the injury occurred. *Wilson v. Texas Parks & Wildlife Dep't*, 8 S.W.3d 634, 635 (Tex.1999) (per curiam denying petition for review) (citing *City of Denton v. Van Page*, 701 S.W.2d 831, 835 (Tex. 1986)). A property possessor must not injure a licensee by willful, wanton, or grossly negligent conduct, and must use ordinary care either to warn a licensee of a condition that presents an unreasonable risk of harm of which the possessor is actually aware and the licensee is not, or to make the condition reasonably safe.

---

**2.** Although the plaintiffs alleged that the causeway's failed lighting constituted a premises defect, a special defect, and a misuse of tangible property, the court of appeals considered only their premises-defect claim. Here,

too, the parties focus almost exclusively on that claim. Thus, we consider only whether the pleadings and jurisdictional evidence raise a premises-defect claim within the Act's sovereign-immunity waiver.

*State Dep't of Highways & Pub. Transp. v. Payne,* 838 S.W.2d 235, 237 (Tex.1992).

Here, the plaintiffs have not alleged that the defendants injured them willfully or wantonly, or that they were grossly negligent. And although the defendants argue generally, as a policy matter, that the court of appeals' decision impinges upon governmental units' discretion in deciding whether and what kind of lighting to install along roadways, they do not challenge the court of appeals' holding that the plaintiffs' claims in this case are based upon the defendants' maintenance of the causeway lighting and thus do not concern discretionary acts. Accordingly, we consider only whether the plaintiffs' pleadings and jurisdictional evidence are sufficient to allow them to maintain a premises-defect claim within the Act's immunity waiver.

### III. Standard of Review

In deciding a plea to the jurisdiction, a court may not weigh the claims' merits but must consider only the plaintiffs' pleadings and the evidence pertinent to the jurisdictional inquiry. *Texas Natural Res. Conservation Comm'n v. White,* 46 S.W.3d 864, 868 (Tex.2001); *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554–55 (Tex.2000).[3] When we consider a trial court's order on a plea to the jurisdiction, we construe the pleadings in the plaintiff's favor and look to the pleader's intent. *See Texas Ass'n of Bus. v. Texas Air Control Bd.,* 852 S.W.2d 440, 446 (Tex.1993); *Peek v. Equipment Serv. Co. of San Antonio,* 779 S.W.2d 802, 804–05 (Tex.1989). When a plaintiff fails to plead facts that establish jurisdiction, but the petition does not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading

sufficiency and the plaintiff should be afforded the opportunity to amend. *See Peek,* 779 S.W.2d at 804–05; *Texas Dep't of Corrections v. Herring,* 513 S.W.2d 6, 9–10 (Tex.1974). On the other hand, if the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. *See Peek,* 779 S.W.2d at 804–05.

### IV. Discussion

Defendants argue that, for several reasons, the plaintiffs have either failed to allege or their pleadings effectively negate certain elements of a premises-defect claim within the Act's immunity waiver. First, the County contends that it neither owned nor exercised exclusive control over the causeway or its streetlight system, and therefore cannot be held liable for the alleged premises defect. Second, the County contends that the plaintiffs have not alleged a condition posing an unreasonable risk of harm because it was not foreseeable that Brown would lose control of his vehicle and then be struck by a motorist while attempting to exit the wreckage. Third, the defendants claim that any risk of harm presented by the alleged defect was not unreasonable when weighed against the burden that governmental entities would face if the defendants here could be held liable for the failed block of lighting. Fourth, the defendants characterize the alleged dangerous condition as "darkness at night," and argue that this condition is so open and obvious that knowledge of the condition should be imputed to causeway motorists. Finally, the defendants contend that, even if knowledge of the dangerous condition cannot be

---

**3.** The County argues that the court of appeals erred in considering evidence outside of the pleadings in reviewing the pleas to the jurisdiction. Given our holdings in *Bland* and

*White,* which the County does not cite, this argument has no merit. *Bland,* 34 S.W.3d at 554–55; *White,* 46 S.W.3d at 868.

imputed to the plaintiffs, the plaintiffs nevertheless failed to plead an element necessary to maintain their premises-defect claim, that is, that they did not actually know of the danger.

## A. Possession of the Premises

The County argues that it cannot be subjected to a premises-liability claim within the Act's immunity waiver because it neither owned nor exercised exclusive control over the causeway or its streetlight system. *See Wilson*, 8 S.W.3d at 635. But a premises-liability defendant may be held liable for a dangerous condition on the property if it "assum[ed] control over and responsibility for the premises," even if it did not own or physically occupy the property. *Van Page*, 701 S.W.2d at 835; *see also Wilson*, 8 S.W.3d at 635. The relevant inquiry is whether the defendant assumed sufficient control over the part of the premises that presented the alleged danger so that the defendant had the responsibility to remedy it. *Cf. Van Page*, 701 S.W.2d at 833–34 (concluding that the city did not assume control over a storage building, which was on plaintiff's lot and which housed the alleged dangerous condition). Here, the plaintiffs allege that the County "maintained the [causeway] pursuant to a contract with the State." And it is undisputed that the County assumed certain maintenance responsibilities over the causeway's streetlight system. Construing the pleadings in the plaintiffs' favor, we conclude that they adequately allege the first element of a premises-liability claim—that the County possessed the property. *See id.*

## B. Foreseeability of Harm

A condition poses an unreasonable risk of harm for premises-defect purposes when there is a "sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar event as likely to happen." *Seideneck v. Cal Bayreuther Assocs.*, 451 S.W.2d 752, 754 (Tex.1970). The County contends that the pleaded condition did not pose an unreasonable risk of harm because a reasonably prudent person could not have foreseen that a driver such as Brown would lose control of his vehicle and then, while exiting the wreckage, be struck by another motorist. But foreseeability does not require that the exact sequence of events that produced an injury be foreseeable. *See Walker v. Harris*, 924 S.W.2d 375, 377 (Tex.1996); *see also Clark v. Waggoner*, 452 S.W.2d 437, 440 (Tex. 1970) (stating that foreseeability prong of proximate cause does not "require that [defendants] anticipate just how injuries will grow out of [the] dangerous situation"). Instead, only the general danger must be foreseeable. *Walker*, 924 S.W.2d at 377. Here, focusing on the general danger and the causeway's particular characteristics, we cannot say that the plaintiffs failed to plead, or that their pleadings affirmatively negate, their premises-liability claim's unreasonable-risk-of-harm element. As the court of appeals observed, "the Causeway is more dangerous than an ordinary road" upon the complete failure of a large block of streetlights. 80 S.W.3d at 599. The causeway curves and ascends high above the water, its shoulders are narrow, and concrete barriers prevent motorists who drive onto it from turning around. We cannot say, as a matter of law, that it is unforeseeable that a significant and unexpected change in lighting at night on a narrow and curving causeway could impair a motorist's ability to avoid obstacles that lie ahead. While Brown's alleged lack of care may be an issue of comparative responsibility for the jury to decide, *see* TEX. CIV. PRAC. & REM CODE § 33.012, it does not render the subsequent harm in this case unforeseeable.

Furthermore, we cannot determine from the pleadings and the limited jurisdictional evidence that Brown was in fact negligent in operating his vehicle.

Importantly, correspondence in the record reveals that the defendants themselves knew of the general danger that the causeway's numerous, nonfunctioning streetlights posed. Kenneth Conway, the County's park-system director, described the failed lighting as "a serious public safety issue" and "a serious safety hazard." In a letter to TxDOT, Conway specifically identified the danger posed to motorists "stranded in poorly lit sections" of the causeway. The general foreman of the contractor hired to repair the lights, too, recognized the danger. He wrote in a letter that the causeway's lighting system posed an "[e]xtreme hazard." Considering the pleaded facts and the record evidence, we cannot conclude that the events in question were not foreseeable.

### C. Unreasonableness of Risk

■■■ The defendants argue that conditions on the causeway did not present a risk of harm that was unreasonable when measured against the burden that governmental entities would face if the County and TxDOT could be held liable in this case. They contend that allowing the plaintiffs' claims to proceed will effectively require governmental entities to either light every stretch of public roadway or remove all lighting, because any unexpected illumination change might constitute a premises defect for which they may be held liable. Governmental entities could face liability, they claim, for every streetlight that might flicker or go out. But our holding is not so broad. A governmental unit's sovereign immunity is not waived for failure to install lighting, which is a discretionary decision, or even for not repairing

lighting that has been installed if an unreasonably dangerous condition is not thereby created. Our decision rests upon the causeway's unique characteristics and the nature of the particular dangerous condition alleged.

The County analogizes the dangerous condition alleged here to visual obstructions along roadways caused by overgrown vegetation. We have recognized that holding counties liable for failing to remove such obstructions could impose a significant burden on counties. *See Jezek v. City of Midland*, 605 S.W.2d 544, 546–47 (Tex. 1980). But the County misconstrues the plaintiffs' pleadings. Unlike *Jezek*, the condition alleged here is not simply a naturally occurring one that causes a visual obstruction, but rather a malfunctioning block of artificial lighting that the defendants failed to maintain, causing a sudden and unexpected change in driving conditions.

### D. Knowledge of the Condition

■■■ Tort law has long recognized that a landowner has a privilege to "make use of the land for his own benefit, and according to his own desires." PROSSER & KEETON, PROSSER & KEETON ON TORTS § 57, at 386 (Lawyers' ed. 1984). The extent of that privilege, however, varies depending upon the character of the owner's consent to others' entry on the premises. *See* RESTATEMENT (SECOND) OF TORTS § 342 cmt. h. Because a licensee enters for his or her own purposes, "[h]e has no right to demand that the land be made safe for his reception, and he must in general . . . look out for himself." PROSSER & KEETON, PROSSER & KEETON ON TORTS § 60, at 412 (Lawyers' ed. 1984). If a licensee is aware of a dangerous condition, he has all that he is entitled to expect, that is, an opportunity for an intelligent choice as to whether the advantage to be gained by coming on the

land is sufficient to justify him in incurring the risks involved. RESTATEMENT (SECOND) OF TORTS § 342 cmt. l. Thus, to establish liability for a premises defect, a licensee must prove that he or she did not actually know of the condition. *See Payne,* 838 S.W.2d at 237.

### 1. Imputed Knowledge

■ Defendants contend that the dangerous condition here is nothing but "darkness at night," which is so open and obvious that knowledge of the condition must be imputed to causeway users. This imputed knowledge, they claim, negates an essential element of the plaintiffs' premises-defect claims. *See id.* But construing the plaintiffs' allegations in favor of jurisdiction, as we must, the dangerous condition alleged is not merely "darkness" but a failed block of artificial lighting that caused a sudden, unexpected and significant transition from light to darkness. This condition may or may not have been open and obvious to ordinary users considering the causeway's particular characteristics. Specifically, the record indicates that the causeway is narrow, curves, and rises high above the bay. A cement median barrier separates the two travel lanes in each direction and prevents drivers from turning back once embarking upon the bridge. Only a relatively narrow shoulder beside the traffic lanes is available to accommodate vehicles in emergency situations.

On the evening in question, the causeway was lit at the point of entry, but there was no illumination further along the causeway at the accident scene. The relevant inquiry is whether the lighting failure was open and obvious to motorists entering the causeway, because that is the point at which they could choose to avoid the condition or otherwise protect themselves. *Cf. Harvey v. Seale,* 362 S.W.2d 310, 312 (Tex.1962) (stating that a licensee "can remain off the premises if he does not wish to subject himself to the risk of injury" from an open and obvious condition). Construing the pleadings and the jurisdictional evidence in the plaintiffs' favor, and considering the causeway's particular characteristics, we cannot say that sudden darkness created by the failed lighting at the accident scene was a danger open and obvious to motorists entering the illuminated causeway so that knowledge of the condition should be imputed to them as a matter of law. Accordingly, we cannot conclude that the pleadings affirmatively negate the plaintiffs' lack of actual knowledge.

### 2. Actual Knowledge

■ The defendants contend that, even if we cannot impute knowledge of the alleged dangerous condition from the pleadings, the plaintiffs failed to plead that they did not actually know of the condition.[4] The defendants contend that the trial court's dismissal order should be upheld on this basis. We agree that the plaintiffs failed to allege this necessary premises-defect element. Moreover, we disagree with the court of appeals' conclusion that we can infer this element from the pleadings.

Nevertheless, the court of appeals did not err in reversing the trial court's judgment and remanding, because the plain-

---

**4.** At oral argument, plaintiffs suggested for the first time that the relevant inquiry is not whether Brown actually knew of the dangerous condition, but whether Martinez, the motorist who struck him, knew. While it is true that Martinez is also a licensee, the ultimate issue is whether the defendants acted reasonably toward Brown and his passenger. Thus, the proper focus is whether the plaintiffs themselves actually knew of the alleged dangerous condition.

tiffs' pleadings do not affirmatively demonstrate an incurable jurisdictional defect, but merely a pleading deficiency. Because the trial court did not rule on the defendants' special exceptions and allow the plaintiffs an opportunity to amend their pleadings, omitting this element cannot support the trial court's judgment. *See Herring*, 513 S.W.2d at 9–10 (holding that when the allegations do not "affirmatively negate" a claim, dismissal for failure to state a claim is appropriate only when the plaintiff has been "given an opportunity to amend after special exceptions have been sustained"); *see also* 7 WILLIAM V. DORSANEO III, TEXAS LITIGATION GUIDE § 70.03[4][f] (stating that after a trial court sustains special exceptions, "the pleader must be given, as a matter of right, an opportunity to amend"). Accordingly, we affirm the court of appeals' judgment reversing and remanding the case, because the plaintiffs should be afforded an opportunity to amend their pleadings.

## V. Conclusion

We hold that, considering the causeway's particular characteristics, the large block of nonfunctioning streetlights, and the defendants' own knowledge of the danger to causeway users, the pleadings do not affirmatively negate the existence of an unreasonably dangerous condition. We conclude, however, that the plaintiffs failed to plead that they did not actually know of the dangerous condition, an element necessary to prove a premises-defect claim. Because this pleading defect is one for which the plaintiffs should be afforded an opportunity to amend, we affirm the court of appeals' judgment reversing the trial court's dismissal for lack of jurisdiction and remanding the case to the trial court.

Justice JEFFERSON filed a concurring opinion, in which Justice OWEN joined.

Justice RODRIGUEZ filed a concurring opinion.

Justice HECHT filed a dissenting opinion.

Justice JEFFERSON, joined by Justice OWEN, concurring in the judgment.

The Court holds that the unique characteristics of the causeway constitute an "unreasonably dangerous condition" for which governmental entities may be liable under the Texas Tort Claims Act. But the Court never articulates a principle to identify in future cases the characteristics that will give rise to a cause of action within the terms of the Act. In this area of governmental immunity, the Court's "I know it when I see it" analysis exacts too great a price. The resulting uncertainty from the Court's lack of guidance will, I fear, inundate courts with claims against state and local governments for what amounts to discretionary decisions involving the design and illumination of Texas roadways. In my view, this uncertainty is unwarranted because darkness is not an unreasonably dangerous condition. Thus, I would hold that the respondents have failed to state a cause of action under the Torts Claims Act. But because the respondents' pleadings do not negate jurisdiction, I respectfully concur in the Court's judgment only.

Certainly, the facts of the case are disturbing. The accident occurred on the South Padre Island Causeway, a lengthy stretch of elevated, curving highway connecting a major tourist destination to the mainland. Although continuous illumination was installed along the route, on the night of the accident a bank of lights was not functioning. They had been malfunctioning for some time, and the County's park-system director considered this fact to be "a serious safety hazard." Nolan Brown lost control of his truck at that site

and the truck hit a median and overturned. Another vehicle crashed into the overturned truck, resulting in Brown's death. These tragic facts are unique, but then, so are the facts of many other accidents.

The Court identifies a number of factors that purportedly distinguish this case from other thoroughfares. We are told, for example, that this case involves a causeway that curves and ascends, has narrow shoulders, concrete barriers, and a block of malfunctioning lights that caused "a sudden and unexpected change in driving conditions." 80 S.W.3d 557. Although the number of causeways in this State are relatively few, the remaining factors, alone or in combination, describe highways and byways in every county and city throughout the State.

Public roads are generally constructed, owned, and maintained by governmental entities. For that reason, those entities are potential defendants in nearly every automotive accident case. In many cases, competent attorneys can argue plausibly that the circumstances in their client's case are at least as unique as the circumstances here. Because the Court's opinion does not identify any limiting principle, accidents on roads with defective illumination, curves or hills, or with concrete barriers or narrow shoulders, will be sure to inspire litigation in which *County of Cameron* will become the standard rebuttal to jurisdictional pleas.

The installation of roadway lighting is a discretionary decision that governmental agencies balance along with other resource-allocation decisions. No statute requires that governmental entities provide roadway lighting. And no statute requires governmental entities to warn of absent lighting or changed conditions of roadway lighting. The Legislature has entrusted these matters to governmental discretion. But beginning today, governmental entities must exercise this discretion at their peril.

After today, governmental entities will balance the decision to illuminate roadways against the real possibility that those lights, once installed, might fail and thrust drivers into "sudden darkness" at night. They will weigh the social utility of additional lighting against the very real threat that scarce resources will be spent defending claims involving accidents where some segment of those lights has malfunctioned. Assuming those entities are risk averse, the prudent course may well be to adopt a conservative stance and reduce or eliminate highway-lighting initiatives. However, this Court should not impose that Hobson's choice on governmental entities.

More than two decades ago, in *Jezek v. City of Midland*, 605 S.W.2d 544 (Tex. 1980), this Court recognized the obvious dangers in imposing a similar duty on counties. We stated: "It would be a rigorous burden indeed for a rural county in a state such as Texas to police and remove vegetation from roads when they cause visual obstruction." *Id.* at 547. But today, instead of reaffirming what we said in *Jezek*, the Court attempts to distinguish this case because "the condition alleged here is not simply a naturally occurring one that causes a visual obstruction, but rather a malfunctioning block of artificial lighting that the defendants failed to maintain...." 80 S.W.3d 557. I am not persuaded by the Court's distinction. Darkness is certainly naturally occurring and a governmental entity's failed attempts to protect against the dangers posed by darkness do not create an unreasonably dangerous condition. At some point along every highway, streetlights end, plunging drivers into darkness. And requiring governmental entities to shield drivers from every transition from light to dark along a roadway would be a heavy burden indeed.

Today's decision is even more alarming because, under the Court's analysis the ultimate question—whether the roadway is "unreasonably dangerous"—is answered not only by the existence of malfunctioning lights, but also by the extent to which the roadway has hills or curves, barriers or narrow shoulders. Because these roadway design decisions are discretionary, they should not be used to aid in establishing liability. *State v. Rodriguez*, 985 S.W.2d 83, 85 (Tex.1999) ("Design of any public work, such as a roadway, is a discretionary function involving many policy decisions, and the governmental entity responsible may not be sued for such decisions."). While I do not believe the Court intends to impose liability for discretionary acts, the absence of any principled basis for limiting the scope of the Court's opinion is deeply troublesome and will undoubtedly jeopardize discretionary road-design decisions.

Some areas of the law permit case-by-case development, leaving it to later courts to discern any emerging pattern. But in my view, it is unnecessary in this area of the law. Darkness, however characterized, cannot constitute an unreasonably dangerous condition. The harm to our jurisprudence of so holding is simply too great. We generally allow litigants to amend to cure pleading defects when the pleadings do not allege enough jurisdictional facts. *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). While it may be unlikely that the respondents will be able to plead sufficient jurisdictional facts, they should be allowed that opportunity. For this reason only, I concur in the Court's judgment.

Justice RODRIGUEZ, concurring.

The plaintiffs acknowledge that the governmental defendants were not required by any law to illuminate the causeway. Their initial decision to illuminate the highway was a discretionary act. CIV. PRAC. & REM.CODE § 101.056. The question then arises: after a governmental unit decides to install streetlights, does it have a duty to ensure that the lights work properly?

The Court decides, and I agree, that the plaintiffs' pleadings and the evidence in this case are sufficient to raise a premises defect claim. "If a claim arises from a premise defect, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property...." *Id.* § 101.022(a). We have previously stated in *City of Grapevine v. Roberts*, 946 S.W.2d 841 (Tex.1997), that:

> [i]f the condition was an ordinary premise defect, the [governmental unit] owed [the plaintiff] the same duty that a private landowner owes a licensee. Generally, the duty a landowner owes a licensee is not to injure the licensee through willful, wanton, or grossly negligent conduct. An exception to the general rule is that if the landowner has knowledge of a dangerous condition and the licensee does not, the landowner has a duty either to warn the licensee or to make the condition reasonably safe.

*Id.* at 843 (citations omitted). I agree that the governmental units knew that the lights were not working properly. I also agree that Brown should be afforded the opportunity to replead regarding whether he did not actually know about the allegedly dangerous condition.

I write separately, however, to state that I join in the judgment because our current law mandates this result. I share, however, the concerns expressed by JUSTICE HECHT that the "burden on the governments of Texas will be felt" by this opinion. It should be noted that the Texas Department of Transportation reports that there are approximately 79,297 "center-

line" miles of roads and highways maintained by the State.[1] In addition, there are 142,170 miles of county roads in Texas.[2]

Whether to install lights in the first instance is an exercise of the government's discretion. But once having done so, the maintenance of such a lighting system is ministerial and does not afford immunity from liability. This leads to the absurd result that when a governmental unit builds new roads or streets it should decide not to light them.

The Court's opinion is limited to deciding whether a plea to the jurisdiction was properly granted, and it does not subject the governmental defendants to any liability. Upon remand, Brown will still need to cure his pleading defect and establish causation. The problem that exists, however, is that numerous other governmental defendants will now incur substantial litigation costs ascertaining when bulbs in exterior light fixtures burned out, what caused the light bulbs to burn out, and whether the bulbs have been burned out for so long that the governmental entity should have discovered that fact and replaced them. Plaintiffs will second guess (1) when government employees should have arrived to do the necessary repairs, (2) whether the governmental employees should have erected temporary signs, and (3) how many employees should have been dispatched to work on the lights. *See City of Baytown v. Peoples*, 9 S.W.3d 391 (Tex. App.—Houston [14th Dist.] 1999, no pet.).

In *Tarrant County Water Control & Improvement District No. 1 v. Crossland*, 781 S.W.2d 427 (Tex.App.—Ft. Worth 1989, writ denied), the plaintiffs were fatally injured in a nighttime boating accident. There is a bridge in the portion of the reservoir where they were killed. A boat must slow down to sit lower in the water in order to go safely under the bridge because of the amount of clearance between the water and the underside of the bridge. *Id.* at 430. The plaintiffs were killed when their heads struck the underside of the bridge. *Id.* The plaintiffs' estates argued that the bridge and reservoir areas should have been lighted and that warning signs should have been provided. In reversing a jury award of over $1.2 million, the court of appeals noted that the plaintiffs did not point to any specific act or omission other than the lack of lights at the bridge. *Id.* at 432. The Second Court of Appeals noted that "the decedents faced the most common and obvious danger known to man, darkness." *Id.* at 435. The Second Court of Appeals further observed "why [should] the bridge ... be considered more dangerous than any other unlighted recreational area. With 4,790 square miles of inland water and more than 200 major reservoirs, Texas ranks second behind Minnesota for the most inland water among the continental states.... In summary, vast areas of Texas are devoid of artificial illumination, and the State has no duty to light the great outdoors." *Id.*[3]

The Second Court of Appeals was correct. There is no duty to light "the vast areas of Texas" and the 300,000 plus miles of highways, roads, and streets in this State. Ironically, the Court's opinion to-

---

1. Pocket Facts, Texas Department of Transportation (March 2002).

2. *Id.*

3. Indeed, in *Jezek v. City of Midland*, 605 S.W.2d 544 (Tex.1980), this Court similarly recognized that counties did not have a duty to clear or warn of vegetation that obstructed a driver's vision. We stated: "It would be a rigorous burden indeed for a rural county in a state such as Texas to police and remove vegetation from roads when they cause visual obstruction." *Id.* at 547.

day provides no incentive for governmental units to increase public safety in that regard. I defer to the Legislature to act upon the County's public policy arguments regarding the financial burden that may be placed on counties to maintain all exterior lighting.

Justice HECHT, dissenting.

Assume for me, if you will, that all roadways that are dark at night are unreasonably dangerous. This is hard, I know, since almost all of the roadways in the world are dark at night, and for that reason most cars are equipped with headlamps. But assume that darkness at night is unreasonably dangerous so that we can take that issue off the table. (As an aside, I should point out that sunshine can also make a roadway unreasonably dangerous because it gets in your eyes; but that is not this case, and the Court wisely reserves that issue for, as it were, another day.) Before a governmental entity in Texas can be liable for an unreasonably dangerous condition in a roadway, there must be proof either that the condition was a "special defect"—like an excavation or obstruction [1]—or that the plaintiff did not know of the condition.[2] Since nighttime darkness is nothing like an excavation or obstruction, Texas law leaves a plaintiff but one avenue (if you will) of recovery for damages caused by the relatively regular going down of the sun, and that is to prove that he could not see that it was dark.

Now one might say: well, that's impossible; any fool driving along can tell by looking whether a roadway is light or dark. But the Supreme Court of Texas is not any fool; it has an easy answer for such skepticism when "the dangerous condition alleged is not merely 'darkness' but a failed block of artificial lighting that caused a *sudden, unexpected and significant transition from light to darkness.*"[3] Mind you, no one claims in this case that he was driving along and the roadway lighting *suddenly went off.* The lights had been off for awhile, long enough for Cameron County to know about it; if that were not true, the County would not be liable for the darkness for another reason, and that is that it did not know the lights were out.[4] But Cameron County knew the lights were out on a section of the Queen Isabella Causeway for the same reason that Nolan Brown and Hector Martinez and anyone else driving along, or anyone else who just looked, knew it: because it was dark there. So when the Court says the darkness was "sudden", it means nothing more than that the causeway was lighted for a stretch, and then for a stretch it wasn't. By saying that the darkness was "unexpected", I suppose the Court means that Brown and Martinez had not anticipated as they were driving along that the lights might be out. But when they came upon the darkness, they surely must have thought to themselves, "Hmmm, the highway's dark here," just as if they had come to the end of any lighted roadway. So however unexpected the darkness may have been, it was still plain as day, so to speak. And when the Court says the "transition from light to darkness" was "significant", I confess I haven't a clue what it means. The distinction between darkness that is "significant" and plain old insignificant darkness is lost on me.

It seems obvious that any driver moving down the road can see whether it is dark

---

1. TEX. CIV. PRAC. & REM.CODE § 101.022(b); *State Dep't of Highways & Pub. Transp. v. Payne,* 838 S.W.2d 235, 238 (Tex.1992).

2. *Payne,* 838 S.W.2d at 237.

3. *Ante* at 558 (emphasis added).

4. *Payne,* 838 S.W.2d at 237.

no matter how "sudden, unexpected and significant" that darkness is, so I don't quite see what difference any of this makes to whether the plaintiff can prove that he did not know that an obviously dark roadway was dark. Either he could see the road was dark or he couldn't, and how is it possible that he couldn't and be licensed to drive? It look lighted but it really wasn't? Well, the Court says, it was the condition of the causeway that made all the difference.

> [T]he causeway is narrow, curves, and rises high above the bay. A cement median barrier separates the two travel lanes in each direction and prevents drivers from turning back once embarking upon the bridge. Only a relatively narrow shoulder beside the traffic lanes is available to accommodate vehicles in emergency situations.[5]

I must say that I cannot quite grasp the Court's point here. The conditions of the unlighted causeway may have made it unreasonably dangerous, but we have already assumed (against all common sense) that every unlighted roadway is unreasonably dangerous, even a straight, wide, flat, low one. The issue is not how narrow or curvy or high a roadway is, or how many lanes it has or how wide its shoulder is; the issue is whether a driver can see that it's dark or not. Dark, narrow roadways look just as dark as dark, wide roadways. Widening roads, or straightening them up, or leveling them off, or giving them shoulders does not lighten them up very much.

Like any driver on any unlighted roadway in the world, Brown should have known when he came upon the dark part of the causeway that if he stopped for some reason, a driver coming along behind him might plough into him, and Martinez should have known that if he outran his headlights, he might hit something. But, again, none of this has anything to do with whether a driver coming up on a dark road can see that it's dark, which determines whether the plaintiffs can possibly win this case.

So is there any point to this part of the Court's discussion? No. Then why is it in the opinion? I can't say. Wholly apart from everything that's been said so far, "[t]he relevant inquiry," the Court says, is "whether the lighting failure was open and obvious to motorists entering the causeway, because that is the point at which they could choose to avoid the condition or otherwise protect themselves."[6] Now, at last, we're onto something. This at least makes sense. All the plaintiffs must prove in this case is that when Brown entered the causeway, he could not see far enough ahead to know that some of the lights were out. He has not pleaded this, the Court says, but he should be allowed to amend. Well, I for one am strongly in favor of a reasonable opportunity to amend. I do not favor waiver of valid claims and defenses because of the inadvertent mistakes inevitable for even the ablest counsel. But there's no point in having the plaintiffs amend their pleadings if they're still going to lose as a matter of law. Amendment is futile unless, if they allege that Brown did not know when he entered the causeway that some of it was not lighted, they can prevail. Is that allegation, if proved, sufficient to make the County liable for the darkness? Yes, says the Court. Well, then, the County should just pay up. Unless it can prove that Brown had supervision (including x-ray vision to see through the bridge) or was clairvoyant, it can't possibly escape liability, because no one but Superman and Nostradamus could

**5.** *Ante* at 558.

**6.** *Ante* at 558.

possibly have known, entering the causeway, that the lights were out ahead. (I assume, as we all must, that Brown hadn't been over the causeway enough at night to know that sometimes the lights were out, and that even if he had, he had every reasonable expectation that the lights would have been fixed since his last crossing.)

To put the Court's holding as plainly as possible: Had the causeway been wider, flatter, or straighter, and had it had wider shoulders, Brown could either have looked down the road and seen that it was dark in one spot and then turned back, or pulled over, or somehow stayed in the light (even though he did not know he needed to because he did not know he was about to wreck his truck on the concrete barrier in the median), but he could do none of those things; and even though Brown saw the darkness when he came upon it, it was sudden, unexpected, and significant, and besides, he did not know of the darkness *when he entered the causeway;* so therefore the County is liable. Logic does not flow through this like a quiet stream, I know, but I am trying to restate the Court's position as accurately as I can. Even if this rule, bizarre as it is, were correct, I am at a loss to understand its application to this case. What difference could it possibly have made to Brown had he known when he entered the causeway that part of it was unlit? He never thought he was going to wreck his truck, in the darkness or the light. No reasonable driver could possibly have thought, well, if part of this causeway is dark and I wreck my vehicle there, others may not be able to see me, so I'll cross if it's lit, but if it's not, I'm staying on the mainland.

"The relevant inquiry" posited by the Court raises the precise concern expressed by the County as well as amici curiae, the Texas Municipal League, the Texas City Attorneys Association, and the Texas Municipal League Intergovernmental Risk Pool, which is, as the Court recognizes, that "allowing the plaintiffs' claims to proceed will effectively require governmental entities to either light every stretch of public roadway or remove all lighting, because any unexpected illumination change might constitute a premise defect for which they may be held liable."[7] The Court never dismisses this concern because, truth to tell, it's valid. How often will it happen that a driver enters a lighted portion of a roadway without being able to see a dark spot ahead? Lots. And what difference does it make whether lights are out or whether the lighted portion has just ended? Most drivers still won't know, when they start out, where the darkness is up ahead. So if the Court means what it says today, and "[t]he relevant inquiry" is what a driver can see when he first enters a lighted roadway, then the governments of Texas simply need to redo their budgets or raise taxes or both to cover the costs of extra lighting and litigation like this.

And if that's what the Court thinks, why not just say so? Why not just say: Look, if you choose to light a roadway, you must maintain the lighting or face liability for accidents that happen in areas of darkness. Two reasons, I suppose. One, such a rule of liability could move governments not to light roadways at all rather than face liability for inevitable lighting failures, thereby placing the traveling public in greater danger. And two, the rule cannot take into account that lighting must end somewhere, and why the effect of that darkness on motorists is any different from failed lighting is inexplicable.

It may be, however—one cannot always tell for sure—that the Court does not real-

7. *Ante* at 557.

ly mean what it says. Indeed, in another case decided today, *Rocor International, Inc. v. National Union Fire Insurance Co.*,[8] the Court discloses that it did not really mean what it said in *American Physicians Insurance Exchange v. Garcia.*[9] So it does happen, much too often, and it may be that this case is just another "restricted railroad ticket, good for this day and train only."[10] While we can't say that all highways should be lighted, or even that existing lighting should be repaired, maybe the plaintiffs in this undeniably tragic case will get something in settlement. This occasional propensity of the Court to try to help out a particularly sympathetic litigant without destroying the law emerged in an oral argument not long ago. Professor Laurence H. Tribe, arguing a case in this Court, was actually asked, "Can't we just have a rule for this case alone without implicating other, similar cases?" "Not and be a court," he replied, more than a little surprised. If the Court's "relevant inquiry" is for real, then the law of premises liability has been changed fairly significantly—like light to dark. The burden on the governments of Texas will be felt, and we should just say so. If not, then we have not acted like a court.

Either way, I respectfully dissent.

**8.** 77 S.W.3d 253 (Tex.2002).

**9.** 876 S.W.2d 842 (Tex.1994).

**10.** *Smith v. Allwright*, 321 U.S. 649, 669, 64 S.Ct. 757, 88 L.Ed. 987 (1944) (Roberts, J., dissenting).