COURT
OF APPEALS
SECOND
DISTRICT OF TEXAS
FORT WORTH
NO. 2-02-320-CV
 
UNIVERSITY OF NORTH TEXAS       
           
           
           
        APPELLANT
V.
CARLA HARVEY AND CATHERINE       
           
           
           
    APPELLEES
GRACE HARVEY
 
------------
FROM THE 367TH DISTRICT COURT OF DENTON COUNTY
------------
OPINION
------------
I. Introduction
The University of North Texas (UNT)
appeals the denial of its plea to the jurisdiction asserting sovereign immunity.
In three issues, UNT contends that the trial court erred by failing to grant
UNT's plea to the jurisdiction because Appellees Carla and Catherine Grace
Harvey(1) failed to plead a waiver of sovereign
immunity under the Texas Tort Claims Act. In a fourth issue, UNT asserts that no
waiver of sovereign immunity exists for the Harveys' strict liability claims. We
will affirm the trial court's denial of UNT's plea to the jurisdiction on the
Harveys' negligence claims concerning the ice barrels. We will reverse the
denial of UNT's plea to the jurisdiction on the Harveys' other negligence claims
and on the Harveys' strict liability claims and render judgment for UNT on those
claims.
Also pending before us is UNT's
motion for reconsideration of our denial of its prior motion to strike the
Harveys' appendix. UNT alleges that the appendix contains deposition testimony
not presented to the trial court at the plea to the jurisdiction hearing. We
carried UNT's motion for reconsideration with this case, and, in connection with
our disposition of this appeal, we will deny it. We have utilized the Harveys'
appendix as well as UNT's motion for reconsideration only to clarify the
identity of the witnesses whose testimony was presented to the trial court via
deposition excerpts at the plea to the jurisdiction hearing. We have not
considered jurisdictional evidence that was included in the appendix but not
presented to the trial court.
II. Standard of
Review
We review a trial court's ruling on
a plea to the jurisdiction under a de novo standard of review because subject
matter jurisdiction is a question of law. Mayhew v. Town of Sunnyvale,
964 S.W.2d 922, 928 (Tex. 1998), cert. denied, 526 U.S. 1144 (1999).
The plaintiff has the burden to plead facts affirmatively showing the trial
court has jurisdiction. Tex. Ass'n of Bus. v. Tex. Air Control Bd., 852
S.W.2d 440, 446 (Tex. 1993). A plea to the jurisdiction should, however, be
decided without delving into the merits of the case. See County of Cameron
v. Brown, 80 S.W.3d 549, 555 (Tex. 2002). A plea to the
jurisdiction does not authorize an inquiry so far into the substance of the
claims presented that the plaintiff is required to put on her case simply to
establish jurisdiction. Bland ISD v. Blue, 34 S.W.3d 547, 554 (Tex.
2000).
Instead, in determining whether
jurisdiction exists, we look to the allegations in the pleadings, accept them as
true, and construe them in favor of the pleader. Tex. Ass'n of Bus., 852
S.W.2d at 446. We must accept the allegations in the petition as true unless the
defendant pleads and proves that the plaintiff fraudulently made the allegations
to confer jurisdiction. See Univ. of Houston v. Elthon, 9 S.W.3d 351,
355 (Tex. App.--Houston [14th Dist.] 1999, pet. dism'd w.o.j.). We
also may consider evidence presented to the trial court to resolve the
jurisdictional dispute, and we must do so when necessary to resolve the dispute.
See Brown, 80 S.W.3d at 555; Bland ISD, 34 S.W.3d at
554.
UNT attached deposition excerpts to
its plea to the jurisdiction, and the Harveys attached evidence and deposition
excerpts to their response to UNT's plea to the jurisdiction. Applying a de novo
standard of review to the jurisdictional issue, we review the Harveys' pleadings
and all of the relevant jurisdictional evidence presented to the trial court to
determine whether some evidence supports the Harveys' contention that their
claims fall within the Texas Tort Claims Act's statutory waiver of immunity. See
Brown, 80 S.W.3d at 555-56.
III. Factual
& Procedural Background
Following a high school drill team
camp conducted in June 1999 on UNT's campus, fifty-eight campers, including
Catherine Harvey, became very ill, suffering nausea, vomiting, and bloody
diarrhea. A doctor with the United States Center for Disease Control assigned to
investigate the incident, Dr. John T. Brooks, determined that the camp
participants had been poisoned by E. coli bacteria. Catherine
experienced extreme complications from the poisoning, was hospitalized, and
almost died.
During the camp, UNT provided ice
to the camp participants. UNT obtained the ice from the cafeteria ice-makers,
transferred it to open garbage barrels, and placed the barrels in various
outside locations. UNT failed to provide scoops to remove the ice from the
barrels, and consequently, the campers used their hands, their cups, and their
water bottles to scoop the ice. UNT also provided a salad bar in its cafeteria,
and bags of salad greens were often transferred to serving bowls on the salad
bar directly from the bags without washing.
Dr. Brooks prepared a report and
submitted his findings to state officials before leaving Texas.(2)
The report indicates that Dr. Brooks and two other CDC employees interviewed all
campers and conducted an epidemiological investigation, an environmental
investigation, and a laboratory investigation. Rectal swabs and stool samples
obtained from UNT's cafeteria workers failed to reveal the presence of E.
coli. Likewise, ice obtained from the cafeteria ice-makers did not reveal
the presence of E. coli. The CDC investigation team eliminated some
potential causes for the E. coli outbreak and ultimately concluded that
the ice in the barrels and the salad bar were likely causes of the E. coli
poisoning. Seventy-three percent of the campers who reported consuming ice from
the barrels on any day became ill.
Concerning the ice barrels, Dr.
Brooks's report explains:

 Throughout the drill team camp,
 the cafeteria placed trash barrels of ice in the foyer of the dormitory. The
 barrels were double-lined with plastic bags, punctured at the top to allow
 escape of trapped air. . . . However, no scoop was provided in the trash
 barrels; camp attendees could dip their hands or cups directly into the ice.
 Ice was placed out three times daily in two to three barrels for approximately
 1-3 hours at a time. When the barrels were refilled, the old ice and meltwater
 were sometimes discarded, the barrels cleaned, and the plastic liners
 replaced. At other times, fresh ice was added on top of the ice and water
 remaining in the barrel. Staff and drill team camp attendees reported seeing
 grass, paper trash, and chewing gum at various times in the ice.

The Harveys sued UNT, pleading that
UNT's negligence in serving ice in open garbage barrels without ice scoops,
failing to wash lettuce and bean sprouts served to the campers, undercooking
food, and failing to utilize sanitary procedures in the preparation of raw meat
all proximately caused Catherine's injuries. In deposition excerpts presented to
the trial court concerning UNT's plea to the jurisdiction, Dr. Wayne Shandera,
the Harveys' expert witness, testified that in his opinion Catherine's E.
coli poisoning was caused by the ice and indicated that in his opinion the
likelihood that her poisoning came from another source was "less than 1 in
50,000." UNT's camp director, Dennis Fisher, said that UNT was responsible
for providing the ice and for "making sure that the barrel had a
scoop." The only people who provided ice to the drill team campers were UNT
employees. Wanda Lowe, UNT's cafeteria manager, explained:

 Q. In your experience as a
 dietician and someone who has been in charge of food safety, do you think it's
 a good idea to have ice in an ice barrel without a scoop?
 A. No.
 Q. Why not?
 A. A scoop is safer.
 Q. In what way?
 A. Hands do not have to come in
 contact with ice.
 Q. What's wrong with hands coming
 in contact with the ice?
 A. You don't know where those
 hands have been, if you have clean hands.
 Q. They can carry bacteria?
 A. We have bacteria on our hands
 all the time.
 Q. And that's why you think ice
 barrels should have scoops?
 A. Yes.

We now apply the law to these
facts.
IV. Section
101.021(2) of the Texas Tort Claims Act
The Texas Tort Claims Act waives
the state's sovereign immunity from suit for:

 personal injury and death so
 caused by a condition or use of tangible personal or real property if the
 governmental unit would, were it a private person, be liable to the claimant
 according to Texas law.

Tex. Civ. Prac. & Rem. Code
Ann. § 101.021(2) (Vernon 1997). This waiver of sovereign immunity is a limited
waiver, allowing suits to be brought against governmental agencies, like UNT, in
only certain narrowly-defined circumstances. See Tex. Dep't of
Criminal Justice v. Miller, 51 S.W.3d 583, 587 (Tex. 2001). Mere reference
to the Act in a plaintiff's pleading does not establish the State's consent to
be sued under the limited immunity waiver. Id. A plaintiff must plead
facts sufficient to invoke a waiver of the Act. Brown, 80 S.W.3d at
555. We must look to the terms of the Act and then determine whether the
liability theories pleaded, the facts pleaded, and the evidence presented in
response to the plea to the jurisdiction demonstrate a claim within the Act's
waiver provisions.
A. Claims
for condition of property
lacking integral safety component; the ice barrels
A governmental unit may waive
immunity under the condition of tangible personal property portion of section
101.021(2) if it provides equipment that is defective because it lacks an
integral safety component. See, e.g., Robinson v. Cent. Tex. MHMR
Ctr., 780 S.W.2d 169, 171 (Tex. 1989) (swimming attire provided by state
not containing life preserver lacked integral safety component, and this
condition of tangible personal property triggered waiver of immunity); Lowe
v. Tex. Tech Univ., 540 S.W.2d 297, 300 (Tex. 1976) (football uniform
provided by university without knee brace lacked integral safety component, and
this condition of tangible personal property triggered waiver of immunity); Overton
Mem'l Hosp. v. McGuire, 518 S.W.2d 528, 529 (Tex. 1975) (hospital bed
provided by hospital without bed rails lacked integral safety component, and
this condition of tangible personal property triggered waiver of immunity); Hampton
v. Univ. of Tex.--M.D. Anderson Cancer Ctr., 6 S.W.3d 627, 631 (Tex.
App.--Houston [1st Dist.] 1999, no pet.) (hospital bed provided by
hospital with bed rails that were not activated by hospital lacked integral
safety component, and this condition of tangible personal property triggered
waiver of immunity); Tex. Dep't of MHMR v. McClain, 947 S.W.2d 694, 697
(Tex. App.--Austin 1997, writ denied) (lockers and wheelchair provided by
hospital lacked integral safety component, and these conditions of tangible
personal property triggered waiver of immunity); McBride v. Tex. Dep't of
Criminal Justice, 964 S.W.2d 18, 22 (Tex. App.--Tyler 1997, no pet.)
(barrel provided by prison without handles lacked integral safety component, and
this condition of tangible personal property triggered a waiver of immunity).
Here, the Harveys contend that UNT provided equipment that is tangible personal
property, the ice barrels; that the ice barrels lacked an integral safety
component, a scoop; and that this condition of the ice barrels provided by UNT
caused Catherine's E. coli poisoning and damages.
We review the pleadings and the
jurisdictional evidence presented regarding this claim. See Bland ISD,
34 S.W.3d at 554. The evidence shows that UNT was responsible for providing and
did provide ice to the campers.(3) UNT provided
the ice in open trash barrels. "Tangible personal property" means
something that has a corporeal, concrete, and palpable existence. Univ. of
Tex. Med. Branch v. York, 871 S.W.2d 175, 178 (Tex. 1994). The ice barrels
meet this definition and therefore are tangible personal property.
The term "condition" is
not statutorily defined, but has been judicially defined as "either an
intentional or an inadvertent state of being" and as "a particular
mode or state of being of a thing." Webb County v. Sandoval, 88
S.W.3d 290, 294 (Tex. App.--San Antonio 2002, no pet.). UNT's cafeteria manager
explained that ice barrels should have scoops for safety reasons; ice barrels
without scoops are less safe because bacteria on hands gets on the ice. Thus, a
scoop was an integral safety component of the ice barrels. The lack of a scoop
was an intentional or inadvertent state, i.e., a condition, of the ice barrels. See,
e.g., Robinson, 780 S.W.2d at 171; Lowe, 540
S.W.2d at 300; Overton Mem'l Hosp., 518 S.W.2d at 529; McClain,
947 S.W.2d at 697; McBride, 964 S.W.2d at 22.
The next question is whether some
relevant jurisdictional evidence exists that the lack of an ice scoop caused
Catherine's injuries. "Cause" under this section means proximate
cause. Dallas County MHMR v. Bossley, 968 S.W.2d 339, 343 (Tex.), cert.
denied, 525 U.S. 1017 (1998); see also Michael v. Travis County Hous.
Auth., 995 S.W.2d 909, 912-15 (Tex. App.--Austin 1999, no pet.) (noting
causation standard under section 101.021(2) is proximate cause, not direct
cause, immediate cause, or sole cause). Lowe testified that scoops were
necessary to prevent bacteria off of hands from getting into the ice and
contaminating it. Dr. Brooks's CDC report explained that the E.coli
outbreak was likely caused by the ice that became contaminated in the barrels.
Seventy-three percent of the campers who consumed ice from the ice barrels
became ill. Dr. Shandera opined that the contaminated ice also caused
Catherine's injuries. Thus, there is some evidence that the lack of an integral
safety component, the scoop, led to Catherine's injuries. See, e.g.,
Kerrville State Hosp. v. Clark, 923 S.W.2d 582, 585 (Tex. 1996) (explaining
that the Act's waiver of immunity is implicated when a state actor provides
property that lacks an integral safety component and the lack of this safety
component leads to the plaintiff's injuries).
In summary, the ice barrels were
tangible personal property, and there is evidence that a condition of the
barrels--the lack of a scoop, which was an integral safety
component--proximately caused Catherine's E. coli poisoning. UNT would
be liable to the Harveys for these injuries if it were a private person. See,
e.g., Austin Ranch Enters., Inc. v. Wells, 760 S.W.2d 703, 710 (Tex.
App.--Fort Worth 1988, writ denied) (upholding actual damages for plaintiff who
suffered food poisoning against restaurant that negligently caused the
poisoning). Taking the allegations in the Harveys' petition as true and
construing them in their favor, and considering the jurisdictional evidence
presented to the trial court, we hold that the pleaded facts and the evidence
trigger a condition-of-tangible-personal-property waiver under section
101.021(2). Therefore, the trial court did not err by denying UNT's plea to the
jurisdiction on the Harveys' negligence claims based on the ice barrels. We
overrule UNT's first, third, and fourth issues to the extent they contend that
the negligence pleadings concerning the condition of the ice barrels provided by
UNT do not state a claim within the Act's sovereign immunity waiver.
B. Strict
liability claims
In its second issue, UNT argues
that there is no waiver of sovereign immunity for strict liability claims and
that, therefore, the trial court erred by denying its plea to the jurisdiction
on the Harveys' strict liability claims. We agree. The Legislature did not
intend a waiver of immunity under the strict liability statute, so a plaintiff
cannot use that statute to trip section 101.021(2)'s requirement that if the
governmental unit were a private person it would be liable. See Nat'l Sports
& Spirit, Inc. v. Univ. of N. Tex., No. 2-02-401-CV, slip op. at 16,
2003 WL 21708816, at *6 (Tex. App.--Fort Worth July 24, 2003, no pet. h.); see
also Tex. Civ. Prac. & Rem. Code Ann. ch. 82. Accordingly, we sustain
UNT's second issue.
C. Other
negligence claims
The Harveys also pleaded that UNT
was negligent by placing unwashed, prepackaged mixed-leaf greens on the salad
bar, by failing to wash bean sprouts placed in a spinach salad, by undercooking
food, by preparing poultry on the same counter top or cutting board as other
food items, by failing to properly clean items used in the preparation of raw
meat before using the items in other food preparation, and because its employees
failed to wash their hands thoroughly after handling raw meats. These averments
do not state claims within the Act's limited waiver of sovereign immunity for a
variety of reasons.
The substance of the Harveys'
complaints concerning the mixed-leaf greens and bean sprouts is that UNT failed
to use water to wash these items. These are allegations of a nonuse, not that
UNT was negligent in its actual use of the lettuce and bean sprouts and not that
it provided property that lacked an integral safety component. Cf. Kerrville
State Hosp., 923 S.W.2d at 585. Even assuming water could be considered
tangible personal property, claims involving a failure to use or the nonuse of
property are not within the Act's sovereign immunity waiver. Miller, 51
S.W.3d at 587. Thus, the Harveys' pleadings concerning UNT's alleged failure to
wash lettuce and bean sprouts do not state an actionable claim under section
101.021(2). See Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2).
The allegation that UNT undercooked
food may constitute a "condition" of the food under the Act. See
Webb County, 88 S.W.3d at 295 (holding plaintiff's claim regarding
negligent condition of food served met requirements for waiver of immunity).
However, the jurisdictional evidence does not show that any specific food item
was undercooked, that Catherine ate undercooked food, or that undercooked food
caused Catherine's injuries. Instead, the evidence shows a "less than 1 in
50,000" chance that Catherine's E. coli poisoning was caused by
something other than the ice. Thus, section 101.021(2)'s waiver provisions are
not implicated by the Harveys' undercooked food claim. See Tex. Civ.
Prac. & Rem. Code Ann. § 101.021(2) (requiring personal injury to be caused
by condition of tangible personal property).
The Harveys' contentions concerning
poultry, raw meat, and other food preparation likewise do not implicate a waiver
of sovereign immunity. The substance of these allegations is that UNT failed to
utilize proper, sterile food-preparation techniques when dealing with poultry
and raw meat. These types of allegations are not actionable under the Act. See
McClain v. Univ. of Tex. Health Ctr., No. 12-01-00363-CV, slip op. at 8-9,
2002 WL 31323472, at *6 (Tex. App.--Tyler Oct. 9, 2002, pet. filed) (holding
plaintiff's claims that hospital negligently failed to use proper sterilization
techniques not actionable under the Act); see also Miller, 51 S.W.3d at
587 (holding that claims involving failure to use property are not within Act's
sovereign immunity waiver).
Finally, the Harveys' claim that
UNT's employees negligently failed to adequately wash their hands does not
allege a use or condition of tangible personal or real property. Therefore, this
claim does not invoke a waiver of sovereign immunity. York, 871 S.W.2d
at 179.
For all of these reasons, the trial
court erred by denying UNT's plea to the jurisdiction on these claims.
Therefore, we sustain UNT's first, third, and fourth issues to the extent that
they contend the Harveys' claims, other than the ice-barrel-related claims, fail
to trigger a waiver of sovereign immunity under the Act.
V.
Conclusion
We affirm the trial court's order
denying UNT's plea to the jurisdiction on the Harveys' negligence claims
concerning the ice barrels. We reverse the trial court's order denying UNT's
plea to the jurisdiction on the Harveys' strict liability claims and the Harveys'
other negligence claims and render judgment that UNT is immune from suit on
those claims. We deny UNT's motion for reconsideration of our order denying
UNT's motion to strike the Harveys' appendix.
 
                                                                      
SUE WALKER
                                                                      
JUSTICE
 
PANEL B: HOLMAN, GARDNER, and
WALKER, JJ.
DELIVERED: August 29, 2003

1. Catherine Harvey was a minor, so her mother Carla
brought suit on her behalf.
2. The Harveys provided the trial court with a certified
copy of this report in their response to UNT's plea to the jurisdiction.
3. UNT claims that because the negligence paragraph of the
Harveys' pleading indicates UNT "served" instead of
"provided" ice and because the ice was not located in the cafeteria
where food is "served," the Harveys have not pleaded a waiver of
immunity. A plaintiff is required to plead facts invoking a waiver of immunity,
not to use particular magic words. See Brown, 80 S.W.3d at
555. We will not strictly construe the Harveys' pleadings against them as UNT
asks us to do in this and other instances in its brief and reply brief. Tex.
Ass'n of Bus., 852 S.W.2d at 446 (requiring us to construe
jurisdictional pleadings in favor of the pleader).