NO. 07-06-0040-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

NOVEMBER 30, 2006

_____

ROBERT WALKUP, M.D. and JACK W. DYER, M.D.,

Appellants

v.

MARY BORCHARDT,

Appellee

_____

FROM THE 237TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2005-529,854; HON. SAM MEDINA, PRESIDING

_____

***MEMORANDUM OPINION***

_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Appellants Robert Walkup, M.D. and Jack W. Dyer, M.D. appeal from an order denying their motions to dismiss Mary Borchardt's (Borchardt) lawsuit against them for medical malpractice.[1] Dismissal was sought on the basis that they were employees of the

_____

[1]Section 51.014 of the Civil Practice & Remedies Code provides for an interlocutory appeal with respect to the denial of a motion for summary judgment that is based on an assertion of immunity by an individual who is an employee of the state or a political subdivision of the state. TEX. CIV. PRAC. & REM. CODE

State of Texas and suit could have been brought against the governmental unit for which they worked. We agree with the trial court that dismissal was not appropriate and affirm the trial court's order.

Borchardt filed suit alleging fifteen acts of negligence[2] on the part of Walkup and Dyer which caused her to become paralyzed. Walkup and Dyer filed affidavits asserting that they were employees of the Texas Tech University Health Sciences Center and that at the time of the allegations which were the subject of the lawsuit they were performing their regular duties in that capacity. The Civil Practice & Remedies Code provides that if a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and it if could have been brought against the governmental unit, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental entity within 30 days. TEX. CIV. PRAC. & REM. CODE ANN. §101.106(f) (Vernon 2005). The issue upon which the parties disagree is whether the lawsuit could have been filed against the governmental unit.

Under the Texas Tort Claims Act, a governmental unit is liable for personal injury caused by the wrongful act or omission or negligence of an employee acting within the scope of his employment if the personal injury is caused by a condition or use of tangible personal property if the governmental unit would, if it were a private person, be liable on the claim. *Id.* §101.021(2). One of the fifteen allegations asserted by Borchardt is that the

---

ANN. §51.014(a)(5) (Vernon Supp. 2006). In *Phillips v. Dafonte,* 187 S.W.3d 669, 675 (Tex. App.–Houston [14th Dist.] 2006, no pet.), the court found that an interlocutory appeal was available even though immunity was raised by a motion to dismiss rather than a motion for summary judgment.

[2]The acts of negligence alleged in parts "o." and "p." are identical.

2

doctors failed "to appropriately interpret such diagnostic procedures as were ordered." Walkup and Dyer claim that this is an allegation of the misuse of personal property for which Borchardt could have brought suit against the State. In so doing, they rely upon *Salcedo v. El Paso Hospital District,* 659 S.W.2d 30, 33 (Tex. 1983), in which the court held that the improper reading and interpreting of electrocardiogram graphs was a misuse of tangible property because reading and interpreting are purposes for which an electrocardiogram is used in diagnosing myocardial infarction from which Saucedo suffered.

A court should review the pleadings in favor of the party bringing suit, and we must look to the facts pleaded. *County of Cameron v. Brown,* 80 S.W.3d 549, 555 (Tex. 2002). Moreover, one statement will not necessarily determine the substance of the complaint. *See University of Texas at El Paso v. Moreno,* 172 S.W.3d 281, 285 (Tex. App.–El Paso 2005, no pet.) (holding that despite a statement that a goalpost was defective, the plaintiff's deposition and pleadings established that the only complaint regarding the goalpost related to the unruly crowd which tore the goalpost down).

In Borchardt's factual statements in her petition, she complains that the defendants failed "to obtain and/or complete an MRI, a thin section CT, or other diagnostic imaging procedure adequate to properly assess [her] condition," that although an MRI was ordered, "it was not completed and no further imaging was undertaken to adequately evaluate the cause of [her] unexplained and progressive pain, numbness, and paralysis until December 30, 2002," and that "no neurosurgical consult was obtained until December 31, 2002, and then only after [she] was found to be paralyzed . . . ." Then fifteen acts of negligence are

3

set forth,[3] only one of which might be said to complain of the misuse of tangible personal property, and that allegation fails to specify the personal property allegedly misused. The substance of Borchardt's cause of action is the failure of the doctors to act or use medical equipment to appropriately diagnose Borchardt's condition and that does not state a cause of action under the Tort Claims Act. *Kerrville State Hospital v. Clark,* 923 S.W.2d 582, 584 (Tex. 1996) (stating that the failure to administer injectable drugs is a non-use of tangible property and does not fall under the waiver provisions of the Texas Tort Claims Act).

Accordingly, we find that the trial court did not err in denying the motions to dismiss. The order of the trial court is affirmed.


Brian Quinn
Chief Justice

---

[3]The other alleged acts of negligence are 1) failure to properly recognize the symptoms and treat the condition, 2) failure to recognize and treat the condition despite the patient's history of back/spine problems and surgery, 3) failure to timely render proper, immediate, and appropriate care and treatment based upon the patient's medical condition and history, 4) allowing her condition to continue to deteriorate in spite of her condition being indicative of a high risk of complications, 5) failing to institute proper and immediate care in spite of the clinical signs that the patient demonstrated and her known risk for neurologic complications, 6) failing to order and provide appropriate care, testing, and treatment, 7) failing to insure that such care, testing, and treatment as was ordered was completed in a timely and proper manner, 8) failing to recognize the patient's need for specialized care and evaluation, 9) failing to demonstrate knowledge of the sign and symptoms of cord compression, 10) failing to order and cause appropriate treatment to be initiated in a timely manner, 11) failing to take adequate actions to prevent the progression of the patient's condition, 12) failing to obtain laboratory findings and perform diagnostic testing which was clearly indicated, 13) failing to provide appropriate care based on the patient's presentation, symptoms, and complaints, and 14) failing to obtain an emergent neurosurgical consultation.

4