ALLDAY DENTAL and Amar Al–Kutob, Appellants,

v.

THE DENTAL SOLUTION, Appellee.

No. 14–08–00746–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 25, 2010.

William F. Harmeyer, Houston, for appellants.

Maurice L. Bresenhan, Jr., Houston, for appellee.

Panel consists of Justices YATES, FROST, and BROWN.

## OPINION

KEM THOMPSON FROST, Justice.

This appeal arises out of a contract dispute between a dental employer and a dental-placement service over placement fees. Following a trial on the merits in which the jury found in favor of the placement service, the trial court rendered a judgment against the employer. On appeal, the employer claims that the placement service operated illegally under the Texas Occupation Code because it did not meet state licensure requirements, thereby rendering the contract between the parties void and unenforceable. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellee The Dental Solution is a company that places dental employees in dental clinics on a temporary or permanent basis for a fee. The Dental Solution filed suit against appellants Allday Dental, a dental clinic, and Amar Al–Kutob, who, along with his wife, owned Allday Dental. According to the live petition, The Dental Solution and Allday Dental entered into a "Placement Agreement," which provides in relevant part:

5. CLIENT shall pay TDS [The Dental Solution] a placement fee for each day that a DENTIST, DENTAL HYGENIST, or DENTAL ASSISTANT referred to CLIENT by TDS [The Dental Solution] performs service for CLIENT, with such placement fee to be in the following amounts:

a. CLIENT shall pay TDS [The Dental Solution] a placement fee of $54.00 for each eight hour day a DENTIST provides services to CLIENT, and $47.00 for each four hour day minimum scheduling.

At trial, the parties referred to this section of the Placement Agreement as pertaining to temporary placement fees. The parties referred to the following section of the Placement Agreement as pertaining to a permanent placement fee:

9. In the event CLIENT employs, joint ventures with, associates with or in any manner affiliates with a SERVICE PROVIDER, or enters into any contractual relationship with a SERVICE PROVIDER referred to the CLIENT by TDS directly, or indirectly, through any TDS [The Dental Solution] placement, on a full time basis anytime during a period of one (1) year after the date of

termination of this Agreement or one (1) year after the last day of actual work by any Service Provider based upon any referral by TDS (whichever is later), CLIENT agrees to pay TDS [The Dental Solution] a placement fee equal to fourteen 14% of the yearly gross compensation to be paid to the SERVICE PROVIDER.

According to the terms of the parties' agreement, in addition to signing the agreement on behalf of Allday Dental, Al–Kutob also individually agreed to perform under the terms of the Placement Agreement.

In addition to suing Allday Dental and Al–Kutob, The Dental Solution also brought suit against Dr. Sharhonda Washington, a dentist whom The Dental Solution referred to Allday Dental.[1] Washington's agreement with The Dental Solution provides in relevant part:

In the event Applicant [Washington] works for a dental office in any capacity within the period of one year from the date of initial referral, oral or written, without notifying TDS [The Dental Solution] prior to commencing such assignment, Applicant [Washington] shall be fully liable for any and all damages incurred by TDS [The Dental Solution] as a result of Applicant [Washington] failing to notify TDS [The Dental Solution] of such employment.

In its live petition, The Dental Solution claimed to have placed Washington at Allday Dental on a temporary basis for a single day on June 26, 2004. The parties do not dispute that Allday Dental paid The Dental Solution $54.00 in connection with the services Washington provided on this

---

1. According to The Dental Solution's pleadings, Washington is the current owner of Allday Dental and purchased the clinic from Al–Kutob in November 2006. The record reflects that The Dental Solution and Washington settled their dispute; Washington is not a party to this appeal.

date. However, The Dental Solution alleged that without providing notice to The Dental Solution, Washington worked at the Allday Dental clinic on a regular basis after the original placement date and up until the time she purchased the clinic. On this basis, The Dental Solution sought to recover both temporary and permanent placement fees, jointly and severally, from Allday Dental and Al–Kutob (hereinafter the "Allday Dental Parties") under the Placement Agreement. The Dental Solution also sought damages from Washington, claiming that she breached her agreement with The Dental Solution, by failing to notify The Dental Solution of her additional work at, and undisclosed affiliation with, Allday Dental. The Dental Solution alleged violation of section 2501.101 of the Texas Occupation Code, asserting that the Allday Dental Parties knowingly made false statements and concealed material facts from The Dental Solution in an effort to obtain Washington's services as an employee without compensation to The Dental Solution. The Dental Solution sought to recover attorney's fees, costs, and pre- and post-judgment interest.

At a hearing on February 20, 2008, just prior to jury selection and trial, the Allday Dental Parties moved for a continuance so that The Dental Solution could supplement discovery responses on the method of calculating damages. For this reason, the trial court reset the trial for April 15, 2008. The following exchange occurred at the time of this resetting:

[ALLDAY DENTAL PARTIES' TRIAL COUNSEL]: Is the Court precluding dispositive motions like motions for summary judgment?

[TRIAL COURT]: Yes, we're done. We're trying it. I'm continuing this and opening discovery only for the purpose of ascertaining the economic damages that was the basis of the defendant's [sic] motion today stating that they had no idea of the theory, the amounts being sought by the plaintiff. We'll answer that question and on we go to trial. Otherwise, we're locked in. We're not changing anything else about it.

About a month later, on March 14, 2008, the Allday Dental Parties each filed a document entitled "Plea to the Jurisdiction, First Amended Verified Answer, and Counterclaim." These pleadings turned on the Allday Dental Parties' assertions that The Dental Solution was operating a personnel service in violation of the Texas Occupation Code because The Dental Solution did not have a certificate of authority, as required by the code, and was not exempt under the code from obtaining the certificate. The Allday Dental Parties alleged that the contract upon which The Dental Solution's claims are based is void and unenforceable as it relates to personnel service placement fees. On this basis, the Allday Dental Parties each asserted that The Dental Solution lacked standing to bring suit for personnel service placement fees and the trial court lacked subject matter jurisdiction to award personnel service placement fees to The Dental Solution.[2] The Allday Dental Parties also each asserted as a verified denial that The Dental Solution lacked the capacity to bring suit for personnel service placement fees. Additionally, the Allday Dental Parties each asserted affirmative defenses of illegality of the contract and failure to perform conditions precedent by obtaining a

2. The Allday Dental Parties also filed a joint motion for summary judgment, alleging that no genuine issues of material fact existed based on the same jurisdictional grounds. In support of this motion, they alleged that The Dental Solution operated illegally under the Texas Occupation Code without a certificate of authority; the trial court denied this motion before trial.

certificate of authority under the Texas Occupation Code.

Ten days later, the Allday Dental Parties filed a motion for leave of court to proceed with the filed pleas to the jurisdiction, first amended verified answers, and counterclaims. On this same date, The Dental Solution moved to strike the Allday Dental Parties' pleas to the jurisdiction, amended answers, counterclaims, and joint motion for summary judgment. The record contains no ruling on The Dental Solution's motion to strike.

At trial, after The Dental Solution rested its case, the Allday Dental Parties reasserted their plea to the jurisdiction and motion for leave to amend their pleadings. The trial court denied the plea to the jurisdiction and ruled that an exemption in the Texas Occupation Code for obtaining a certificate of authority applied to The Dental Solution's claims against the Allday Dental Parties. The trial court also denied as untimely the motion for leave to amend.

Following trial on the merits, the jury rendered a verdict affirmatively finding that Allday Dental and Al–Kutob each failed to comply with their agreement with The Dental Solution. The jury awarded The Dental Solution the sum of $33,373.00 in temporary placement fees and $6,917.62 in permanent placement fees as fair and reasonable compensation for the damages that resulted from the Allday Dental Parties' breach of the Placement Agreement. The jury also made a finding regarding reasonable attorney's fees. In addition, the jury determined that the Allday Dental Parties and Washington committed fraud against The Dental Solution and assessed 40% responsibility to Allday Dental, 30% responsibility to Al–Kutob, and 30% responsibility to Washington. The jury determined that the sum of $40,000.00 would fairly and reasonably compensate The Dental Solution for damages that resulted from the fraud.

Based on the jury's verdict, the trial court rendered a final judgment in favor of The Dental Solution and against the Allday Dental Parties,[3] jointly and severally, in the sum of $33,373.00. The trial court also rendered judgment against the Allday Dental Parties, jointly and severally, for attorney's fees as well as pre- and post-judgment interest on the award.

## II. ISSUES AND ANALYSIS

On appeal, the Allday Dental Parties assert that the trial court erred by refusing to accept their "Plea[s] to the Jurisdiction, First Amended Verified Answer[s], and Counterclaim[s]." They further assert that The Dental Solution does not qualify as a "management search consultant" entitled to an exemption from the license requirement under section 2501.052 of the Texas Occupation Code, as set forth in the Allday Dental Parties' pleas to the jurisdiction.

The Allday Dental Parties' first and second issues turn on the assertion, as stated in their respective "Plea[s] to the Jurisdiction, First Amended Verified Answer[s], and Counterclaim[s]," that The Dental Solution operated illegally as a personnel service under the Texas Occupation Code because it did not have the requisite certificate of authority and did not meet the exception for the licensure requirement as a "management search consultant."[4] We

---

3. The trial court's judgment reflects that following the return of the jury's verdict, The Dental Solution and Washington resolved their issues and settled all matters submitted to the jury and addressed in the verdict.

4. In their fourth issue, the Allday Dental Parties assert that the trial court erred in refusing to permit them to amend their pleadings to include their respective "Plea[s] to the Jurisdiction, First Amended Verified Answer, and

construe this argument to be a challenge to the trial court's denial of the Allday Dental Parties' pleas to the jurisdiction. According to these pleas, without the certificate of authority, The Dental Solution lacked standing to bring suit for personnel service placement fees and the trial court thus lacked subject matter jurisdiction to award damages for such fees.[5] In their third issue, the Allday Dental Parties assert that The Dental Solution operated illegally under the Texas Occupation Code and, therefore, the parties' Placement Agreement is void and unenforceable.

## Standards of Review

■ We review a trial court's ruling on a plea to the jurisdiction de novo. *See Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex.2004). In our review, we construe the pleadings liberally in favor of the pleader and look to the pleader's intent to determine whether the facts alleged affirmatively demonstrate the trial court's jurisdiction to hear the cause. *See id.* If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction, but do not affirmatively demonstrate incurable defects in the jurisdiction, the issue is one of pleading sufficiency, and the claimant should be afforded the opportunity to amend. *See id.* at 226–27. If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing an opportunity to amend. *See id.* at 227.

■ If, in its plea to the jurisdiction, a party challenges the existence of jurisdictional facts, the reviewing court considers the relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do. *See id.* If the evidence creates a fact question regarding the jurisdictional issue, then the plea to the jurisdiction must be denied. *See id.* at 227–28. However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdiction issue, then the court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228. In ruling on a plea to the jurisdiction, a court does not consider the merits of the parties' claims. *See id.* at 226–28; *County of Cameron v. Brown,* 80 S.W.3d 549, 555 (Tex.2002).

We review the trial court's interpretation of applicable statutes de novo. *See Johnson v. City of Fort Worth,* 774 S.W.2d 653, 655–56 (Tex.1989). In construing a statute, our objective is to determine and give effect to the legislature's intent. *See Nat'l Liab. & Fire Ins. Co. v. Allen,* 15 S.W.3d 525, 527 (Tex.2000). If possible, we ascertain that intent from the language the legislature used in the statute and we do not look to extraneous matters for an intent the statute does not state. *Id.* If the meaning of the statutory language is unambiguous, we adopt the interpretation supported by the plain meaning of the provision's words. *St. Luke's Episcopal Hosp. v. Agbor,* 952 S.W.2d 503, 505 (Tex. 1997). We must not engage in forced or strained construction; instead, we must yield to the plain sense of the words. *See id.*

## Meaning of Statutory Terms

■ The Dental Solution alleged in its live petition that the Allday Dental Parties

Counterclaim." We presume for the sake of our analysis that the Allday Dental Parties amended their pleadings in this manner.

5. We presume for the sake of argument that, if The Dental Solution is not exempt from obtaining a certificate of authority under the Texas Occupation Code, then it would lack standing, and the trial court therefore would lack subject matter jurisdiction.

violated section 2501.101 of the Occupation Code. Under this provision, an employer [6] or a person seeking employment may not "make a false statement or conceal any material fact to obtain an employee or employment by or through a personnel service." TEX. OCC.CODE ANN. § 2501.101(b)(1) (Vernon 2004). A " '[p]ersonnel service' means a person who, regardless of whether for a fee, directly or indirectly offers or attempts to obtain permanent employment for an applicant or obtains or attempts to obtain a permanent employee for an employer." *Id.* § 2501.001(9) (Vernon 2004).

"A person may not own a personnel service that operates in this state unless the person holds a certificate of authority issued under this chapter." *Id.* § 2501.051 (Vernon 2004). Notably, however, the subchapter of the Occupation Code requiring a certificate of authority does not apply to a personnel service that operates as a "management search consultant." *Id.* § 2501.052(b) (Vernon 2004). A " 'management search consultant' means a personnel service that: (1) is retained by, acts solely on behalf of, and is compensated only by an employer; and (2) does not directly or indirectly collect a fee from an applicant as payment for a service performed by the personnel service." *Id.* § 2501.052(a)(1–2).

The trial testimony reflects that The Dental Solution operated for the purpose of offering or attempting to obtain temporary and permanent employment for dental-employee applicants and to offer or attempt to obtain temporary or permanent employees for dental employers. Both in response to the Allday Dental Parties' pleas to the jurisdiction and now on appeal, The Dental Solution asserts that it operated as a "management search consul-

tant" under the Occupation Code. This statute defines a "management search consultant" as a type of "personnel service." *See id.* § 2501.052(a) (defining "management search consultant"). It is undisputed that The Dental Solution operated as a personnel service as defined by the Occupation Code. *See id.* § 2501.001(9) (defining "personnel service"). It is also undisputed that The Dental Solution did not hold a certificate of authority issued under the Occupation Code. *See id.* § 2501.051 (prohibiting a personnel service from operating without a certificate of authority). Moreover, the parties do not dispute that pursuant to section 2501.052(b) of the Occupation Code, a "management search consultant" is exempt from obtaining a certificate of authority. *See id.* § 2501.052(b) (providing that the subchapter of the code pertaining to a certificate of authority does not apply to a management search consultant).

In denying the pleas to the jurisdiction, the trial court ruled that The Dental Solution qualified as a "management search consultant" under the Occupation Code. The Allday Dental Parties, however, assert that The Dental Solution did not qualify as a "management search consultant" for the following reasons:

- The Dental Solution was retained by both Washington and Allday Dental;

- The Dental Solution's respective agreements with Washington and the Allday Dental Parties imposed restrictive covenants on both Washington and the Allday Dental Parties;

- The Dental Solution sought to collect a placement fee from both the employer and employee under the contract provisions of each contract; and

**6.** Under the Texas Occupation Code, an " '[e]mployer' means a person who employs or seeks to employ an employee." TEX. OCC CODE ANN. § 2501.101(4).

- The Dental Solution collected a placement fee in the sum of $6,900 from Washington in a post-verdict settlement.

By virtue of the parties' Placement Agreement, the evidence reflects that Allday Dental retained The Dental Solution to refer dental employees for temporary and permanent employment. *See* TEX. OCC. CODE ANN. § 2501.052(a)(1). The record evidence demonstrates that although The Dental Solution held an agreement with Washington[7] (as a dental-employee applicant), The Dental Solution considered dental clinics, such as Allday Dental, to be clients. Trial testimony reflects that The Dental Solution referred dental employees to dental clinics only upon a client's request for a referral. Under the terms of The Dental Solution's agreement with Washington, The Dental Solution made no guarantee of employment and Washington undertook no obligation to accept any proposed placement.[8] Specifically, their agreement provides that The Dental Solution will refer Washington, as an applicant, to a dental clinic if the dental clinic contacts The Dental Solution requesting a referral for applicants. Therefore, we conclude that The Dental Solution was retained by the Allday Dental Parties and acted solely on behalf of the Allday Dental Parties in making the referral or placement. *See id.*

Trial testimony reflects that, in practice, a dental clinic is responsible for paying any related placement fees to The Dental Solution for its services in placing an employee at a dental clinic, which is in accord with the terms for placement fees in the parties' Placement Agreement. The Dental Solution's agreement with Washington does not obligate her to pay any such placement fee.[9] Therefore, under the Occupation Code, The Dental Solution does not directly or indirectly collect a fee from an applicant as payment for a service performed by the personnel service. *See id.* § 2501.052(a)(2). Based on the evidence, we conclude The Dental Solution operated as a "management search consultant," as defined under the Occupation Code. Consequently, the Dental Solution was exempt from obtaining a certificate of authority.[10]

7. Under section 2501.052, a "management search consultant" is not prohibited from providing services to an employee applicant; rather, a "management search consultant" is compensated only by an employer and does not directly or indirectly collect a fee from the applicant as payment for a service performed by the personnel service. TEX OCC.CODE ANN. § 2501.052(a)(1–2).

8. *See* TEX. ATT. GEN. OP. No. 98–065, 1998 WL 537337 (1998) (providing that as long as a personnel service acts as an employer's agent, rather than an employee's agent, and receives compensation only from the employer, the personnel service is a "management search consultant" even if the personnel service and the employee strike a bargain that is of mutual benefit to both parties).

9. Notably, the agreement with Washington holds her accountable for damages incurred by The Dental Solution as a result of Washington's failure to notify The Dental Solution of such employment; however, the plain and unambiguous language of the Placement Agreement does not operate to allow The Dental Solution to directly or indirectly collect a fee from an applicant as payment for a service performed by the personnel service. *See* TEX OCC.CODE ANN. § 2501.052(a)(2).

10. The Allday Dental Parties' assertion that The Dental Solution collected a placement fee of $6,900 from Washington in a post-verdict settlement lacks merit; the record is devoid of any such settlement agreement or its terms. The Dental Solution brought suit against Washington for damages under her agreement for failure to notify The Dental Solution of her employment at the Allday Dental clinic. The Allday Dental Parties have provided no authority to support the assertion that a cause of action for damages for a breach of an agreement is equivalent to an award for compensation under an agreement.

*See id.* § 2501.052(a)(1–2). The Allday Dental Parties' first and second issues are overruled.

The trial court properly determined that The Dental Solution operated as a "management search consultant" exempt from the statutory requirement for a certificate of authority. Therefore, The Dental Solution was not operating illegally under the Occupation Code, as asserted by the Allday Dental Parties in their third issue. On this basis, the assertions in their third issue lack merit. Accordingly, we overrule the third issue.[11]

We affirm the trial court's judgment.

11. Presuming that the Allday Dental Parties amended their pleadings to include their respective "Plea[s] to the Jurisdiction, First Amended Verified Answer, and Counter-claim," the Allday Dental Parties have not shown any error. Therefore, we need not and do not address their fourth issue.