**AFFIRMED and Opinion Filed November 2, 2021**



In The

# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-19-01583-CV

**DALLAS MEDICAL CENTER, LLC D/B/A DALLAS MEDICAL CENTER, PRIME HEALTHCARE SERVICES–MESQUITE, LLC D/B/A DALLAS REGIONAL MEDICAL CENTER, AND KNAPP MEDICAL CENTER, Appellants**
**V.**
**MOLINA HEALTHCARE OF TEXAS, INC., Appellee**

**On Appeal from the 193rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-06920**

## MEMORANDUM OPINION

Before Justices Osborne, Pedersen, III, and Reichek
Opinion by Justice Reichek

The case before us is the second appeal involving Molina Healthcare of Texas, Inc. and its alleged failure to properly reimburse out-of-network providers for emergency and other medical services to its insureds. Earlier this year, we issued *Texas Medicine Resources, LLP v. Molina Healthcare of Texas, Inc.*, 620 S.W.3d 458 (Tex. App.—Dallas 2021, pet. filed), which involved physician groups asserting a private right of action to enforce the payment obligations set out in the Texas Insurance Code. We concluded no such private right of action existed under the

statute and affirmed the trial court's dismissal of the physicians' statutory and equitable claims for lack of subject matter jurisdiction. *Tex. Med.*, 620 S.W.3d at 472.

In this appeal, the providers are a group of out-of-network hospitals that allege they provided emergency and other medical services to Molina's insureds and were not properly reimbursed. They seek payment under the insurance code and an administrative regulation as well as asserting equitable and contractual theories. The question before us is whether these claims remain viable after our holding in *Texas Medicine*. For reasons set out below, we conclude they are not. We therefore conclude the trial court did not err in granting the plea to the jurisdiction and dismissing the claims.

## FACTUAL BACKGROUND

Plaintiff/appellants Dallas Medical Center, LLC d/b/a Dallas Medical Center, Prime HealthCare Services–Mesquite, LLC d/b/a Dallas Regional Medical Center, and Knapp Medical Center (collectively, "Hospitals") are general acute care hospitals that provide emergency and non-emergency medical services to patients without regard to a person's insurance coverage or ability to pay. Defendant/appellee Molina is an insurance company authorized to operate as a Health Maintenance Organization (HMO) and Managed Care Organization (MCO) pursuant to Texas law. Molina offers HMO health benefit plans through the federal Affordable Care Act exchange (the Molina Marketplace benefit plans) and MCO

Medicaid managed care benefit plans to Medicaid-eligible individuals (Medicaid plans).

For both Marketplace and Medicaid plans, Molina uses in-network healthcare providers who agree to pre-negotiated, discounted rates. Hospitals were in-network providers until October 16, 2016, when they terminated their contracts and became out-of-network providers. As out-of-network providers, Hospitals do not have a contract with Molina setting out an agreed rate or rates for the provisions of medical services. All of the claims here involve out-of-network services provided to Molina's insureds (also referred to as "members") under either a Molina Marketplace or Medicaid plan.

Texas has statutes and administrative regulations regarding payment of out-of-network providers of emergency and other authorized services to an insured. The Texas Insurance Code obligates HMOs, such as Molina, to "pay for emergency care performed by non-network physicians or providers at the usual and customary rate or at an agreed rate." TEX. INS. CODE ANN. § 1271.155(a). The Texas Administrative Code obligates MCOs, such as Molina, to reimburse an out-of-network, in-area service provider for emergency and authorized services at "the Medicaid [Fee For Service] rate in effect on the date of the service less five percent, unless the parties agree to a different reimbursement amount." *See* 1 TEX. ADMIN. CODE § 353.4(f)(2)(A). Collectively, the parties refer to these provisions as the "Emergency Care Laws."

In this lawsuit, Hospitals assert they provided out-of-network emergency care and other medical services to hundreds of Molina's insureds, submitted claims to Molina reflecting charges for those services, but "[d]espite state law and contractual provisions requiring Molina to pay out-of-network providers for all emergency and, in certain conditions, non-emergency services provided to their members," Molina refused to "fully and properly pay" for the claims. Instead, they allege, Molina paid less than 10% of their charges for the services they provided. Hospitals filed this lawsuit to recover for all services provided to Molina's insureds through December 31, 2018. The live petition alleged the following:

> Count 1: Violation of section 353.4 of Title 1 of the Texas Administrative Code, seeking to recover the difference between the amount paid, if any, and the Medicaid Fee for Service rates in effect on date of service less 5% for services provided under the Molina Medicaid plan;
>
> Count 2: Violation of section 1271.155 of the Texas Insurance Code, seeking to recover the difference between the amount paid, if any, and the "usual and customary" rate for services provided under the Marketplace plans, as well as prompt pay penalties, interest, and attorney's fees under sections 843.342 and 843.343 of the insurance code;
>
> Counts 3 and 5: Unjust enrichment and quantum meruit, alleging Hospitals "conferred a benefit" on Molina and its insureds by "providing valuable medical services." Hospitals seek restitution and damages for unjust enrichment. As for quantum meruit, they seek the "value" of the services as defined under section 353.4 of the administrative code and section 1271.155 of the insurance code;
>
> Count 4: Breach of contract as assignees of Molina insureds' contractual rights, seeking damages for Molina's failure to "fully, properly, and timely pay" for medical services provided, including

–4–

penalties and attorney's fees under section 542.060 of the insurance code (prompt payment of claims);

Count 6: Declaratory judgment, declaring the proper method for calculating the "usual and customary rate" under section 1271.155 for out-of-network emergency services rendered to Molina's insureds and the rate Molina is required to pay for such services rendered in the future (on and after January 1, 2019);

Count 7: Attorney's fees under chapters 37 and 38 of the Texas Civil Practice and Remedies Code in connection with the claims for declaratory relief and breach of contract, respectively.

Molina filed an amended answer and counterclaim, generally denying all claims and alleging claims for declaratory relief and attorney's fees. Subsequently, Molina filed a plea to the jurisdiction asserting that Hospitals lacked standing to assert any of their claims. In particular, Molina asserted that Hospitals do not have a private right of action under either section 1271.155 of the insurance code or section 353.4 of the administrative code, and Hospitals' ability to assert the remaining claims are necessarily dependent on standing under those provisions. Thus, Molina asserted the trial court should dismiss the claims for lack of subject matter jurisdiction.

Following a hearing, the trial court agreed with Molina, granted the plea, and dismissed the Hospitals' claims with prejudice. Thereafter, Molina nonsuited its counterclaims. The trial court subsequently made extensive findings of fact and conclusions of law to support its decision on the plea to the jurisdiction. This appeal ensued.

In seven issues, Hospitals challenge the dismissal of each of its claims for lack of standing. In an eighth issue, Hospitals argue that even if dismissal was proper, the trial court erred in dismissing the claims "with prejudice."

## DISCUSSION

### A. Standard of Review

A plea to the jurisdiction challenges a trial court's subject matter jurisdiction to hear a case. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The purpose of the plea is to defeat a claim without regard to whether it has merit. *Id*.

Standing is a prerequisite to subject matter jurisdiction, and subject matter jurisdiction is essential to a court's power to hear a case. *M.D. Anderson Cancer Ctr. v. Novak*, 52 S.W.3d 704, 708 (Tex. 2001). Thus, a plea to the jurisdiction is a proper vehicle to challenge a plaintiff's standing to maintain suit. *Vernco Constr., Inc. v. Nelson*, 460 S.W.3d 145, 149 (Tex. 2015) (per curiam). The plaintiff bears the burden to plead and establish facts affirmatively showing the court has subject matter jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004).

We review a trial court ruling on a plea to the jurisdiction de novo. *Miranda*, 133 S.W.3d at 226. In performing our review, we consider only the pleadings and evidence pertinent to the jurisdictional inquiry. *Cty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002). We construe the pleadings in the plaintiff's favor and

look to the pleader's intent. *Id.* When a plaintiff fails to plead facts that establish jurisdiction, but the petition does not affirmatively demonstrate incurable defects, the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend. *Id.* If, however, the pleadings affirmatively negate the existence of jurisdiction, then the plea to the jurisdiction may be granted without allowing the plaintiff to replead. *Id.*

## B. *Texas Medicine Resources, LLP v. Molina Healthcare of Texas, Inc.*

In *Texas Medicine,* the plaintiffs were medical provider groups made up of physicians who staffed hospital emergency departments and freestanding emergency medical care centers. 620 S.W.3d at 461–62. The physicians claimed they provided out-of-network emergency care to Molina's enrollees under the Marketplace benefit plan, billed Molina for their services, but were not adequately reimbursed. *Id.* at 462.[1] And, as here, the physicians claimed the payments failed to satisfy Molina's obligation to pay the "usual and customary" rate for services under section 1271.155 of the insurance code. To recover those fees, the physicians sued for violations of section 1271.155, arguing the statute implied a private cause of action. They also alleged violations of the insurance code's unfair settlement and prompt pay provisions, claimed recovery under quantum meruit, and sought the same declaratory relief as requested here. *Id.* As in this case, Molina filed a plea to the

---

[1] The previous suit did not involve Molina's Medicaid benefit plan.

–7–

jurisdiction asserting that the physicians lacked standing to assert their claims for various reasons. *Id*. at 462–63. We agreed with Molina.

The physicians conceded section 1271.155 did not expressly confer a private right of action; therefore, we analyzed whether the legislature intended to provide an implied right of action. *Id*. at 620 S.W.3d 463–64. ("When a private cause of action is alleged to derive from a statutory provision, as it is in this case, our duty is to ascertain the drafters' intent."). As we explained, issues regarding "the availability of and payment for emergency medical services" involves important policy considerations that are "primarily for the legislature, not the courts." *Tex. Med.*, 620 S.W.3d at 464. And, while the legislature may delegate enforcement to any number of bodies, separation of powers principles obligate us "to exercise restraint, strictly construe statutory enforcement schemes, and imply a private cause of action to enforce such statutes *only* when the legislature's intent is clearly expressed from the language as written." *Id*.

In considering section 1271.155, we observed that the insurance industry is "heavily and comprehensively regulated by both federal and state law," set out the various statutory provisions applicable to Molina as an HMO, and considered the same case law argued here as well as the statute's legislative history. *Id*. at 465–66. After a detailed analysis, we ultimately concluded (1) the insurance code provides a "distinct and comprehensive scheme" to enforce the statute that is not directed to the courts, (2) the language of section 1271.155 does not provide any textual entitlement

of payment to the physicians, (3) Texas courts do not adhere to "necessary implication test" to determine whether a private right action exists, and (4) the legislative history confirmed the statute was intended to function as part of a broader regulatory scheme. *Id.* In short, we concluded that the version of section 1271.155 applicable in the case (which is also applicable here),[2] did not create a private right of action in favor of non-network physicians or providers. *Id.* at 468.

We also rejected the physicians' claims that quantum meruit and declaratory judgment afforded alternative means to redress Molina's alleged underpayment. We reasoned that the physician's equitable claim for quantum meruit sought to enforce the same payment obligations under the statute and thus failed "because the judiciary is precluded from creating a claim in equity that merely repackages a statutory claim the legislature decline to create." *Id.* at 470. As for physicians' request for a judicial declaration as to the rate Molina should pay under 1271.155(a) for future services, we concluded that because the physicians lacked standing to enforce section 1271.155(a) directly, they likewise lacked standing to assert the claim indirectly under the Declaratory Judgments Act. *Id.* at 471. We likewise rejected the physicians' prompt pay claim because (1) without contracted rates, there was no

---

[2] In 2019, the legislature adopted amendments to the Texas Insurance Code to be effective prospectively. As to section 1271.155, the legislature added subsection (f), which for the first time required HMOs to pay non-network providers "directly," and subsection (g), which substantially limits the right of non-network providers to bill patients for the difference between the billed amount and the paid amount. *See Tex. Med.*, 620 S.W.3d at 467. Additionally, the bill included a detailed dispute resolution process in chapter 1467, which allows for mandatory arbitration and judicial review under a "substantial evidence" review. *Id.* As in *Texas Medicine*, these provisions do not apply here because all of the claims arose in connection with payments prior to the effective date of the 2019 amendments.

basis for statutory penalties under the statute and (2) the claim was predicated on the viability of the failed section 1271.155 claim. *Id*. at 469. In sum, we concluded the trial court did not err in concluding it lacked subject matter jurisdiction over the physicians' claims and in granting Molina's plea to the jurisdiction.

### C. Hospitals' Claims

With the above in mind, we turn to the particular issues in this case to determine, first, which claims remain to be resolved after *Texas Medicine*, and (2) the opinion's impact on the remaining issues.[3] The Hospitals' claims for insurance code violations of section 1271.155 and related prompt pay penalties, interest, and attorney's fees under sections 843.342 and 843.343, quantum meruit, and declaratory judgment are identical to those presented in *Texas Medicine*; thus, for the same reasons expressed in our previous opinion, we conclude the trial court did not err in dismissing those claims.[4]

Having so concluded, we turn to the remaining claims: violation of section 353.4 of the administrative code; unjust enrichment; breach of contract and corresponding claims for section 542.060 penalties, attorney's fees and interest in

---

[3] *Texas Medicine* issued after the briefs in this case were filed. Each side, however, filed a letter brief after the opinion issued addressing its impact on the appeal.

[4] To the extent that Hospitals suggest we revisit any portion of our prior opinion, we decline to do so. *See* TEX. R. APP. P. 41.1(a) (panel's opinion constitutes court's opinion); *see also Chakrabarty v. Ganguly*, 573 S.W.3d 413, 415 (Tex. App.—Dallas 2019, no pet.) (en banc) ("Once a panel of this Court has spoken, subsequent panels are powerless to contradict that decision, barring reconsideration by the Court sitting en banc or an intervening decision by the supreme court.")

connection with the breach; and attorney's fees under chapters 37 and 38 of the civil practice and remedies code.

## 1. Violation of Administrative Code

Hospitals assert the trial court erred by dismissing their claim under section 353.4 of the administrative code. They contend section 353.4 (1) does not preclude a private right of action or suggest that the Texas Health and Human Services Commission has "exclusive authority" to enforce it, (2) is not "flanked" by other sections that do contain a private right of action, which would undermine any argument that a private right of action was implied and (3) while containing an administrative process for complaints regarding reimbursement, the process is "neither mandatory nor exclusive." Hospitals argue this issue jointly with their issue regarding section 1271.155 and rely on the same arguments previously rejected in *Texas Medicine*. And, for the same reasons, we conclude the rationale of *Texas Medicine* applies with equal force to section 353.4.

In reaching this conclusion, we note that the purpose of chapter 353 is to define the requirements for the Medicaid Managed Care program, and it instructs that its rules must be read in conjunction with, among other things, federal and state statutes. 1 TEX. ADMIN. CODE § 353.1. HHSC is the state agency responsible for overseeing and monitoring the Medicaid managed care program. *Id*. at 353.4(a).

Section 353.4 specifically addresses MCO requirements concerning out-of-network providers. Similar to 1271.155, section 353.4 has a "distinct and

comprehensive scheme" for enforcement and is not directed to the courts. *See Tex. Medicine*, 620 S.W.3d at 464. Subsection(c) provides that an MCO may not refuse to reimburse an out-of-network provider for medically necessary emergency services, must allow its members to be treated by any emergency services provider for emergency services as well as services to determine if an emergency condition exists, and the MCO must pay for such services. *See id.* § 353.4(c). Subsection (f) states that the MCO "must reimburse an out-of-network, in-area service provider the Medicaid FFS rate in effect on the date of service less five percent, unless the parties agree to a different reimbursement amount." *See id.* § 353.4(f)(2)(A).

Subsection (i) addresses out-of-network payment disputes and contains an administrative dispute resolution process. Under this rule, if a complaint is made, HHSC investigates it and can impose a corrective action plan for the MCO if it determines the MCO failed to reimburse the provider at the allowable rate. *See id.* § 353.4(i), (j). If additional reimbursement is owed, the rule sets out a timetable by which the MCO must make payment. *See id.* § 353.4(j)(5). "HHSC pursues any appropriate remedy authorized in the contract between the MCO and HHSC if the MCO fails to comply with a corrective action plan under subsection (j)." *Id.* § 353.4(i)(7).

As in *Texas Medicine*, this comprehensive scheme is not directed to the courts. Thus, we presume the legislature did not intend for a private right of action to be included. *See Tex. Med.*, 620 S.W.3d at 464 ("[I]n cases such as this, where the

relevant statutes are silent on a private right of action but provide detailed administrative enforcement mechanisms, we may presume the legislature intended that a separate private right of action not be included." Given the standard applicable to legislative intent, the text of section 353.4, our previous reasoning in *Texas Medicine*, and Hospitals' reliance on the same cases distinguished in *Texas Medicine*, we conclude that section 353.4 does not provide an implied private right of action to enforce its terms. Accordingly, the trial court did not err in dismissing this claim.

## 2. Remaining Claims

Hospitals challenge the dismissal of their breach of contract claim, arguing they obtained valid assignments of benefits from Molina's insureds and thus have standing independent of the statute or rule

In its findings of fact and conclusions of law, the trial court determined it did not have subject matter jurisdiction to resolve the breach of contract claim for three reasons. First, the court determined the breach of contract claim arose from Molina's obligation to pay at the rates set out in sections 1271.155 and 353.4, and because neither section provides a private right of action, Hospitals do not have standing to bring a contract claim under those sections. Second, the court determined that because Hospitals did not bill Molina's insureds for the difference between what it charged and what Molina paid (known as "balance billing"), the insureds have not incurred any damages and, thus, no claim for breach of contract capable of

assignment existed. And, finally, the court determined that Hospitals' claim is barred by a valid and enforceable anti-assignment provision in the insureds' insurance contracts. Because we agree with the first basis, we do not reach the latter two.

In their live pleading, Hospitals sought to recover as assignees of Molina's insured's contractual rights. They claim they obtained a valid and enforceable assignment of benefits from each of those insureds before the services were rendered and that, under these assignments, Molina's insureds transferred and assigned all hospital and medical provider benefits payable under the insurance contracts, including all related rights and remedies. Hospitals then submitted "clean claims" for those services and Molina breached the agreement "by failing to fully and properly pay" for the services provided "in accordance with those contracts and Texas law."

On appeal, Hospitals contend this claim does not "arise" from the Emergency Care Laws but from the terms of Molina's contracts with its insureds. By way of example, they argue that "certain of Molina's Marketplace contracts" state that "[w]hen services are received from Non-Participating Providers for the treatment of an Emergency Medical Condition, Molina Healthcare will calculate the allowed amount that will be covered *at the usual and customary rate or agreed upon rate*." (Emphasis added.) The highlighted portion of the contract mirrors the language in section 1271.155, and the pleadings seek reimbursement "in accordance with those

–14–

contracts and Texas law." Thus, while Hospitals argue the claim does not arise from the statute or rule, the claim on its face is the exact obligation they seek to enforce under sections 1271.155 and 353.4. Consequently, it is nothing more than an improper repackaging of their statutory claim for which there is no standing. *See Tex. Med.*, 620 S.W.3d at 470 ("Accordingly, the claim fails because the judiciary is precluded from creating a claim in equity that merely repackages a statutory claim the legislature declined to create."); *Davis v. Hendrick Autoguard, Inc.*, 294 S.W.3d 835, 840 (Tex. App.—Dallas 2009, no pet.) (concluding that party cannot "achieve indirectly through a common law contract action what he cannot do directly under the statute").

Hospitals also sought statutory penalties, attorney's fees, and interest under section 542.060 of the insurance code in connection with Molina's alleged breach of contract. Hospitals argue that section 1271.005(c) states that a health maintenance organization "shall comply" with Subchapter B, Chapter 542 "with respect to prompt payment to an ***enrollee.***" (Emphasis in brief). Hospitals contend they asserted their breach of contract claim as an assignee of Molina's members and thus "stand in the shoes" of those enrollees. We have, however, concluded that Hospitals do not have standing to bring their breach of contract claim; thus, we likewise conclude that they lack standing to seek penalties in connection with that claim.

As for Hospitals' equitable claim for unjust enrichment, we reach the same conclusion as *Texas Medicine* did on the physicians' equitable claim for quantum meruit. There, we concluded that the quantum meruit claim failed "because the judiciary is precluded from creating a claim in equity that merely repackages a statutory claim the legislature declined to create." *Id*. at 470. Although Hospitals contend they are not seeking the value of their services "pursuant" to either section 353.4 or section 1271.155, the bottom line is that Hospitals are seeking to enforce the same payment obligations they cannot enforce under either provision. Moreover, as in *Texas Medicine*, we are unpersuaded that Hospitals "conferred a benefit" *on Molina* by providing valuable services to its insureds. As we explained in *Texas Medicine*, the benefits at issue are healthcare services provided to the insured patients, not to Molina. *Id*.

In *Angelina Emergency Medicine Associates PA v. Health Care Service Corp.,* physicians associations sued multiple insurance companies, alleging they had been underpaid for emergency services provided to patients. 506 F. Supp.3d 425, 430 (N.D. Tex. 2020). Among those claims was one for quantum meruit in which the plaintiffs alleged that by "providing medically necessary emergency services" to the defendants' insurance customers, they had "conferred a benefit" on them by "satisfying their 'obligations to arrange and pay for healthcare services' for these members." *Id*. 432. The court rejected the argument:

> Saddling someone with a debt to repay hardly qualifies as a benefit. And the phrasing of the plaintiffs' quantum meruit claim implies its failure. Serving a defendant's *customers* is hardly the same as serving the defendant *itself*.

*Id*.

We agree and see no reason why this logic does not equally apply to Hospitals' equitable unjust enrichment claim. *See id*. ("Quantum meruit is a state-law equitable remedy founded in unjust enrichment."). Accordingly, we conclude the trial court did not err in dismissing Hospitals' unjust enrichment claim.

Lastly, Hospitals challenge the dismissal of their claims for attorney's fees under chapters 37 and 38 in connection with their declaratory relief and breach of contract claims, respectively. Because we have concluded Hospitals lack standing to bring both underlying statutory claims, they likewise lack standing to assert a claim for attorney's fees under those statutes.

Based on the foregoing, we conclude Hospitals lack standing to assert any of the claims brought in the lawsuit. Accordingly, the trial court did not err in granting Molina's plea to the jurisdiction. We overrule issues one through seven. The question remains, however, as to whether the suit should have been dismissed "with prejudice.

In their eighth issue, Hospitals argue that despite determining it "lacked subject matter jurisdiction" to resolve their claims, the trial court dismissed the suit with prejudice. They assert this disposition was error.

A plea to the jurisdiction does not challenge the merits of a claim, but simply challenges the trial court's subject matter jurisdiction without regard to the merits. Thus, dismissal with prejudice is improper if a plaintiff can remedy the jurisdictional defect. *Harris Cty. v Sykes*, 136 S.W.3d 635, 639 (Tex. 2004); *McMillan v. Aycock*, No. 03-18-00278-CV, 2019 WL 1461427, at *3 (Tex. App.—Austin Apr. 3, 2019, no pet.) (mem. op.). Here, Hospitals have made no argument that they can take any action that would either cure the jurisdictional impediment inherent in this suit or create jurisdiction in the future. Under these circumstances, we conclude the trial court did not err in dismissing the case with prejudice. We overrule the eighth issue.

We affirm the trial court's order granting Molina's plea to the jurisdiction.

/Amanda L. Reichek/
AMANDA L. REICHEK
JUSTICE

191583F.P05



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

DALLAS MEDICAL CENTER, LLC D/B/A DALLAS MEDICAL CENTER, PRIME HEALTHCARE SERVICES–MESQUITE, LLC D/B/A DALLAS REGIONAL MEDICAL CENTER, AND KNAPP MEDICAL CENTER, Appellants

No. 05-19-01583-CV     V.

MOLINA HEALTHCARE OF TEXAS, INC., Appellee

On Appeal from the 193rd Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-18-06920. Opinion delivered by Justice Reichek; Justices Osborne and Pedersen, III participating.

In accordance with this Court's opinion of this date, the trial court's order granting the plea to the jurisdiction is **AFFIRMED**.

It is **ORDERED** that appellee MOLINA HEALTHCARE OF TEXAS, INC. recover its costs of this appeal from appellants DALLAS MEDICAL CENTER, LLC D/B/A DALLAS MEDICAL CENTER, PRIME HEALTHCARE SERVICES–MESQUITE, LLC D/B/A DALLAS REGIONAL MEDICAL CENTER, AND KNAPP MEDICAL CENTER.

Judgment entered November 2, 2021.