**Reversed and Remanded and Memorandum Opinion filed April 6, 2023.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-22-00293-CV

---

## CALVIN BLAKE, Appellant

## V.

## SYBARITE PUBS, LLC D/B/A PUBLIC HOUSE HEIGHTS, Appellee

---

**On Appeal from the 215th District Court
Harris County, Texas
Trial Court Cause No. 2019-86056**

---

## MEMORANDUM OPINION

Although several questions are presented in this appeal from a summary judgment, we only consider one of them: whether the movant satisfied its burden of conclusively negating at least one essential element of the nonmovant's claim for premises liability. Because we have determined that the movant did not satisfy that burden, we reverse the trial court's judgment and remand the case to that court for additional proceedings.

## BACKGROUND

Calvin Blake went to steak night at a neighborhood pub controlled by Sybarite Pubs LLC d/b/a Public House Heights (the "Pub"). He sat down in a plastic chair and placed an order. As he was waiting for his meal, one of the legs on his chair broke without warning and he fell to the ground.

Blake sued the Pub under a theory of premises liability, alleging that the Pub had failed to discover, correct, and warn of the chair's dangerous condition. The Pub moved for summary judgment on traditional grounds only by seeking to negate two elements of Blake's cause of action. Blake filed a response, but the trial court granted the Pub's motion.

## ANALYSIS

There is no dispute that Blake was the Pub's invitee. Thus, for Blake to prevail on his claim of premises liability, he was required to prove the following essential elements: (1) the Pub had actual or constructive knowledge of the condition at issue; (2) the condition was unreasonably dangerous; (3) the Pub did not exercise reasonable care to reduce or eliminate the unreasonable risk of harm; and (4) the Pub's failure to reduce or eliminate the unreasonable risk of harm proximately caused his injuries. *See United Supermarkets, LLC v. McIntire*, 646 S.W.3d 800, 802 n.4 (Tex. 2022) (per curiam).

As the movant for a traditional summary judgment, the Pub assumed the burden of conclusively negating at least one of these four essential elements. *See Henkel v. Norman*, 441 S.W.3d 249, 251 (Tex. 2014) (per curiam). The Pub focused on just the first two elements in its motion for summary judgment. Because the trial court granted that motion without specifying which element the Pub had conclusively negated, the ruling can be supported if the Pub established that it was

2

entitled to judgment as a matter of law on either of the two grounds presented. *See* Tex. R. Civ. P. 166a(c). However, if neither ground in the Pub's motion is legally sufficient, or if there is a genuine issue of material fact, then we must conclude that the trial court committed error by granting the motion.

We begin in reverse order by considering the second element of a premises liability claim because that is how the Pub structured its motion for summary judgment. Our review is de novo. *See Katy Venture, Ltd. v. Cremona Bistro Corp.*, 469 S.W.3d 160, 163 (Tex. 2015) (per curiam).

## I. The Pub did not conclusively negate the existence of an unreasonably dangerous condition.

A condition is unreasonably dangerous if it presents an unreasonable risk of harm. *See Brinson Ford, Inc. v. Alger*, 228 S.W.3d 161, 163 (Tex. 2007) (per curiam). And a condition presents an unreasonable risk of harm if "there is a sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar event as likely to happen." *See County of Cameron v. Brown*, 80 S.W.3d 549, 556 (Tex. 2002).

Several factors are considered when deciding whether a condition is unreasonably dangerous, including whether the condition was clearly marked, whether it had previously caused injuries or generated complaints, whether it substantially differed from conditions in the same class of objects, whether it met applicable safety standards, and whether it was naturally occurring. *See Christ v. Tex. Dep't of Transp.*, — S.W.3d —, 2023 WL 1871560, at *3 (Tex. Feb. 10, 2023). These factors mean that the unreasonable dangerousness of a condition "is ordinarily a fact question." *Id.* However, certain innocuous or commonplace hazards are not unreasonably dangerous as a matter of law, particularly when they have not caused other injuries or been the subject of complaints. *Id.*

3

The Pub argued that the chair involved in this case was not unreasonably dangerous as a matter of law because it was not visibly defective. In support of this argument, the Pub referred to Blake's discovery responses and deposition testimony, in which he said that he did not notice a break in the chair when he first sat down in it, and that the chair performed as expected for some length of time until one of its legs broke without warning. The Pub also referred to the deposition testimony of one of its waitresses, who said that she inspected all of the chairs on the day before Blake's injury, and she did not detect any problems with any of the chairs.

But elsewhere in the Pub's motion, there was evidence that the same type of chair had broken and resulted in injury to another invitee. That prior incident creates a fact issue to consider in deciding whether the chair was unreasonably dangerous.

The Pub still argued that the chair was not unreasonably dangerous because the invitee in that prior incident had been misusing the chair by leaning back in it, such that the front two legs were elevated off the ground. The Pub further argued that Blake had been misusing his chair too, because according to the Pub's chef, Blake had also been leaning back in his chair at the time that it broke. We need not determine whether this evidence would conclusively negate the existence of an unreasonably dangerous condition, because even if we assumed that the burden had shifted from the Pub to Blake, there was controverting testimony in Blake's response that he had not been leaning back in his chair, and we must credit that testimony because Blake is the nonmovant. *See City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005) ("A reviewing court must examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion.").

In light of this fact issue, the Pub did not prove that it was entitled to judgment as a matter of law.

## II. The Pub did not conclusively negate its actual and constructive knowledge of the condition.

Even though the Pub did not conclusively negate the existence of an unreasonably dangerous condition, the Pub could still be entitled to summary judgment if it negated both its actual and constructive knowledge of the condition. *See Vernon v. Dall./Fort Worth Int'l Airport Bd.*, No. 02-16-00488-CV, at \*2–3 (Tex. App.—Fort Worth July 13, 2017, no pet.) (mem. op.) (holding that a movant for a traditional summary judgment had negated both its actual and constructive knowledge of a condition). We begin by addressing the Pub's actual knowledge.

Actual knowledge requires the premises owner to know "that the dangerous condition existed at the time of the accident." *See Univ. of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 117 (Tex. 2010) (per curiam). Accordingly, for the Pub to establish that it lacked actual knowledge, the Pub was required to conclusively show that it did not know about the dangerous condition at the time of Blake's injury. In other words, the Pub had the burden of proving a negative.

Premises owners in other cases have satisfied this burden by producing evidence that they had not received any reports of potential danger presented by the condition, or any reports of prior injuries. *See, e.g.*, *Univ. of Tex.-Pan Am. v. Aguilar*, 251 S.W.3d 511, 513 (Tex. 2008) (per curiam) ("Here, the University's Director of Health and Safety testified that there had been no incidents of pedestrians tripping on water hoses on the campus in the past five years. Additionally, the Assistant Director for Facilities, Operations and Maintenance testified that there were no rules or guidelines for the use and placement of water hoses because they had never been a problem on campus."); *City of Houston v. Ayala*, 628 S.W.3d 615, 622 (Tex. App.—Houston [14th Dist.] 2021, no pet.) ("The supervisor attested that he reviewed the records and reports in ASOCS for the thirty days before and the thirty

days after Ayala's slip-and-fall incident and he found 'no records or reports concerning notice of a dangerous condition, including water or other liquid or foreign substance, or of any person slipping and falling or of any incidents, on any escalator,' except for the record of Ayala's incident, which was received after its occurrence.").

The Pub did not produce any evidence along these lines. For instance, there was no affidavit testimony affirmatively stating that the Pub had not received any reports of potential dangers or injuries presented by Blake's chair.

In lieu of such evidence, the Pub argued in its motion that it lacked actual knowledge because Blake had been misusing his chair. The Pub did not explain how Blake's alleged misuse would impact the Pub's actual knowledge of an unreasonably dangerous condition. In any event, the Pub would not be entitled to summary judgment on this point because there was a fact issue as to whether Blake had been misusing the chair.

In one final point, the Pub argues for the first time in its brief that it negated its actual knowledge because it also produced evidence from a waitress who said that she did not detect any defects in the chairs when she inspected them on the day before Blake's injury. But the critical inquiry is whether the Pub lacked actual knowledge of the dangerous condition "at the time of the accident"—not on the day "before." *See Hayes*, 327 S.W.3d at 117.

The waitress's testimony might have supported a conclusion that the Pub lacked actual knowledge of the dangerous condition at the critical time of Blake's injury if there was some additional testimony that the circumstances had not changed since the inspection on the day before—for example, testimony that Blake was the first person to use the chair since the inspection; or, if other invitees had used the chair, testimony that the Pub was not aware of any damage before Blake used it.

6

However, there was no evidence to that effect. Absent such evidence, we cannot say that the Pub conclusively negated its actual knowledge of the dangerous condition. *See Parks v. Steak & Ale of Tex., Inc.*, No. 01-04-00080-CV, 2006 WL 66428, at *3 (Tex. App.—Houston [1st Dist.] Jan. 12, 2006, pet. denied) (mem. op.) (recognizing that chairs in restaurants are "undoubtedly used by many people each day" and that any one of those invitees could have broken or damaged a chair).

Because the Pub did not conclusively establish that it lacked actual knowledge of the dangerous condition, we need not consider whether it also negated its constructive knowledge of the dangerous condition.

We conclude that the trial court erred by granting the Pub's motion, and that the error probably led to the rendition of an improper judgment. *See* Tex. R. App. P. 44.1. In light of that conclusion, we need not consider Blake's remaining arguments, which challenged whether the summary judgment disposed of an unaddressed claim, whether sufficient notice was given of the summary judgment hearing, and whether the trial court abused its discretion by not granting a motion for continuance and motion for new trial. *See* Tex. R. App. P. 47.1.

## CONCLUSION

The trial court's judgment is reversed and the case is remanded to that court for additional proceedings.

/s/     Tracy Christopher
        Chief Justice

Panel consists of Chief Justice Christopher and Justices Bourliot and Wilson.

7