# Supreme Court of Texas

No. 22-0202

The City of Austin, Texas,
*Petitioner*,

v.

Irene Quinlan,
*Respondent*

On Petition for Review from the
Court of Appeals for the Third District of Texas

**Argued March 23, 2023**

JUSTICE LEHRMANN delivered the opinion of the Court.

The Texas Tort Claims Act waives governmental immunity from suit in certain circumstances, but the Act generally does not apply to a governmental unit's failure to perform an act that the unit has discretion not to perform. In this premises-liability case, the City of Austin asserts immunity from the plaintiff's claim that the City negligently maintained a permitted sidewalk cafe. The agreement between the City and the permit-holder restaurant delegated maintenance responsibilities to the restaurant and lacked any terms

requiring the City to ensure the restaurant's compliance with those responsibilities. A divided court of appeals held that the City nevertheless had a legal duty to ensure the restaurant fulfilled its maintenance obligations and that the Act thus waived the City's governmental immunity. Because we hold that the City had discretion to enforce or monitor the restaurant's compliance—but was not required to do so—we reverse.

## I. Background

Irene Quinlan was dining at Güero's Taco Bar on South Congress in Austin. After exiting the restaurant, Quinlan fell more than a foot from the sidewalk to the street, injuring her ankle.

The restaurant maintains a sidewalk cafe between its front door and the street. The sidewalk cafe includes several tables, chairs, and potted plants. The sidewalk is level with the restaurant entrance but elevated more than a foot above the street. When the incident occurred, no railing or barrier was in place preventing patrons from proceeding directly from the restaurant to the street.

Güero's has a permit from the City of Austin to operate its sidewalk cafe. To obtain the permit, the restaurant entered into a "Sidewalk Café Maintenance Agreement" with the City. The Agreement authorizes Güero's to use a designated "'Right-of-Way' . . . for the sole purpose of constructing, installing, operating, maintaining and repairing a temporary sidewalk cafe for food and beverage service, consisting of decking, fencing, tables, chairs and other necessary facilities as described and depicted in [a sketch attached as] Exhibit 'A.'" Güero's is responsible for the operation and maintenance of those

facilities, and the furnishings on the premises may not extend outside the permitted area or "constitute a danger to the health or safety of a patron or the public." Güero's is also responsible for keeping the sidewalk cafe clean and free of litter. The City, however, has the right to enter the sidewalk cafe premises to inspect, improve, maintain, alter, or utilize the premises to ensure the restaurant's compliance with the Agreement. Should the City determine that any of the improvements must be removed or modified, Güero's is responsible for paying all required costs. At its sole discretion, the City may revoke the permit for the restaurant's noncompliance with the Agreement.

Quinlan sued both Güero's and the City for premises liability, alleging that the City breached its duty of care by failing to install railings and failing to warn of the danger of the sudden drop from the sidewalk to the street. She further alleged that the City is liable under a joint-enterprise theory of liability with the restaurant.[1]

After Quinlan filed her third amended petition, the City filed a plea to the jurisdiction, asserting governmental immunity. In response to the City's plea, Quinlan filed a fourth amended petition, which remains her live pleading. In that pleading, Quinlan added allegations that the City was negligent in failing to level the sidewalk with the street and in allowing the restaurant to maintain tables, chairs, and plants in a confusing manner that obstructed Quinlan's view of the sharp drop at the edge of the sidewalk. She further alleged that the Agreement evidenced a maintenance policy affirmatively compelling the

---

[1] Quinlan's claims against Güero's are not before us, and we express no opinion on the merits of those claims.

City to ensure Güero's operated a safe sidewalk cafe and that the City negligently implemented this policy by failing to do so.

The City responded with an amended plea to the jurisdiction, asserting that Quinlan's additional arguments regarding the Agreement did not demonstrate a waiver of immunity. The trial court denied the City's amended plea, and the City appealed. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(5) (providing a right to interlocutory appeal from a trial court order denying a governmental entity's plea to the jurisdiction asserting governmental immunity).

The court of appeals affirmed in part and reversed in part. ___ S.W.3d ___, 2022 WL 261569, at *1 (Tex. App.—Austin Jan. 28, 2022). The court of appeals unanimously held that the City was immune from Quinlan's claims premised on "discretionary design decisions regarding the safety features of the premises." *Id.* at *5. This encompassed Quinlan's "allegations that the City 'failed to install railings between the patio and the street,' 'failed to warn Plaintiff and other patrons of the danger of a sudden drop from the patio to the street,' 'failed to make level the patio and the street,' and 'was obligated to elevate the street and/or provide appropriate modifications to the patio and surrounding area to make such premises safe for patrons.'" *Id.* The court also unanimously held that immunity was not waived under a joint-enterprise liability theory. *Id.* at *8–9. Quinlan did not petition for review of those portions of the court of appeals' judgment, and they accordingly are not before us. *See* TEX. R. APP. P. 53.1.

The court of appeals was divided on whether the City's immunity was waived as to Quinlan's claims "relating to the City's alleged

4

negligent implementation of its policy regarding the maintenance of the premises." 2022 WL 261569, at *9. The majority held that the City's immunity was waived and Quinlan could proceed on those claims, concluding that the Agreement shows "a disputed material fact regarding . . . the degree to which the City exercised control over the maintenance of the premises." *Id.* at *6. Justice Goodwin dissented, opining that the claim involving the City's negligent implementation of policy was also barred by immunity. *Id.* at *9 (Goodwin, J., dissenting). The dissent argued that the pleadings and evidence conclusively establish that the City had discretion, as opposed to the obligation, to enforce or monitor the restaurant's compliance with the Agreement. *Id.* at *10. As a result, the dissent would have held that the Tort Claims Act's exception for discretionary acts applied and that the Act thus did not waive the City's immunity. *Id.* at *10–11.

We granted the City's petition for review.

## II. Discussion

Governmental units, including political subdivisions, are generally immune from suit absent a legislative waiver. *City of San Antonio v. Maspero*, 640 S.W.3d 523, 528 (Tex. 2022). Because governmental immunity is jurisdictional, a governmental entity properly raises an immunity claim in a plea to the jurisdiction. *Univ. of Tex. M.D. Anderson Cancer Ctr. v. McKenzie*, 578 S.W.3d 506, 512 (Tex. 2019). We review a court's ruling on a plea to the jurisdiction de novo. *Id.*

## A. The Tort Claims Act's Discretionary-Function Exception

The Tort Claims Act waives governmental immunity with respect to certain personal-injury claims, including claims that an unreasonably dangerous condition of real property caused the plaintiff's injury. *See* TEX. CIV. PRAC. & REM. CODE § 101.021(2); *see also id.* § 101.022(a) (noting that, with certain exceptions, "if a claim arises from a premise defect, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises"). Quinlan relies on that waiver to pursue her claims against the City.

However, the Act does not apply to, and thus does not waive immunity from, claims based on the state's failure to act when no particular action is required by law. *Tarrant Reg'l Water Dist. v. Johnson*, 572 S.W.3d 658, 662 (Tex. 2019). Proper application of this "discretionary-function exception" to the Tort Claims Act is central to our resolution of this case. The exception provides:

> This chapter [the Tort Claims Act] does not apply to a claim based on:
>
> (1) the failure of a governmental unit to perform an act that the unit is not required by law to perform; or
>
> (2) a governmental unit's decision not to perform an act or on its failure to make a decision on the performance or nonperformance of an act if the law leaves the performance or nonperformance of the act to the discretion of the governmental unit.

TEX. CIV. PRAC. & REM. CODE § 101.056.

The issue here is whether the City was legally obligated to ensure the restaurant's compliance with the Agreement, which delegates to the

6

restaurant the responsibility to maintain the permitted sidewalk cafe. Absent such an obligation, the Act's discretionary-function exception forecloses an immunity waiver. *See id.*

## B. Analysis

In this Court, Quinlan maintains that the Tort Claims Act's discretionary-function exception does not apply to her remaining claims. First, Quinlan asserts that the City had an obligation to enforce the restaurant's compliance with the Agreement under the terms of the Agreement itself. Second, Quinlan argues that, irrespective of the Agreement's terms, the City owed Quinlan a statutory duty of care that could not be delegated to the restaurant. Specifically, Quinlan argues that under Chapter 316 of the Transportation Code, municipalities have a nondelegable legal duty to protect the public from sidewalk cafes with dangerous conditions.[2] The City disputes both contentions and argues that the Act does not apply to the City's discretionary decisions regarding enforcement of the restaurant's maintenance responsibilities under the Agreement.

We hold that the Agreement allows, but does not require, the City to monitor and enforce the restaurant's maintenance obligations with respect to its operation of the sidewalk cafe. Further, we agree with the

---

[2] At oral argument, Quinlan's counsel appeared to also argue—for the first time—that the obstructing tables and chairs were actually located off the permitted premises and on the portion of the sidewalk solely controlled by the City. This allegation does not appear in Quinlan's live pleading, her response to the City's plea to the jurisdiction, her briefing in the court of appeals, or even her briefing in this Court. Accordingly, we decline to consider it as a basis for waiving the City's immunity. *See* TEX. R. APP. P. 33.1.

City that the Transportation Code does not foreclose municipalities from delegating the maintenance of sidewalk cafes to permit holders, as the City has done.[3] Because Quinlan's claims are premised on the City's "failure . . . to perform an act that [it] is not required by law to perform," *id.*, the Act does not waive the City's immunity from suit.[4]

## 1. The City's Discretion to Enforce the Agreement

We first address whether the Agreement legally obligated the City to ensure the restaurant's compliance with its maintenance obligations. Neither Quinlan nor the court of appeals identifies any maintenance- or inspection-related act that the City was affirmatively required to perform under the Agreement. Rather, the Agreement grants the City permission—but does not impose a contractual obligation—to conduct inspections and order additional maintenance as the City deems fit. And Quinlan has produced no evidence that the City ever actually exercised its permissive right to order the restaurant to maintain the sidewalk cafe in a particular way.

---

[3] Quinlan does not argue that any other legal ground forecloses the City from contractually delegating its maintenance responsibilities to a private party in a manner that results in its immunity from suit by an injured third party. We therefore do not consider whether any such legal prohibitions exist and address only the arguments raised by the parties.

[4] This case presents a somewhat unusual vehicle for considering the discretionary-function exception because, under the Agreement, a third party (Güero's) is obligated to maintain the sidewalk cafe. So, the City's discretion concerns the extent to which it monitored a third party, not necessarily the City's substantive determination about how the sidewalk cafe should be designed or maintained.

The City of Austin City Code, which establishes the procedures by which the City issues sidewalk cafe permits and monitors permit holders, is also instructive. The Code gives the director of the Austin Transportation Department the power to issue sidewalk cafe permits. AUSTIN, TEX., AUSTIN CITY CODE, ch. 14-4, § 14-4-3 (2014). When making a permitting decision, the director must determine whether the proposed sidewalk cafe will create a hazardous condition and whether the proposal minimizes potential harm or injury to the public. *Id.* § 14-4-8. But the applicant, not the director, is responsible for preparing a schematic design of the proposed cafe and determining "the number and placement of tables, chairs, and other furnishings." *Id.* § 14-4-7(B)(4)(A). Once the director issues the permit, the City Code imposes minimal monitoring procedures for permit holders, requiring them to either obtain preapproval from the City to rearrange or reconfigure furnishings or to promptly provide the department a sketch of the new placement. *Id.* § 14-4-14. And even here, City oversight is minimal; the onus is on the permit holder to ensure that the new furniture arrangement does not extend outside the permitted area, constitute a danger to a patron or the public, or violate the terms of the permit. *See id.*

In short, the Agreement grants the City a series of permissive rights without any corresponding obligation to enforce them. And neither the City Code nor any other evidence indicates the existence of a municipal policy to exercise those permissive rights on any systematic basis. *See id.* ch. 14-4. A right to ensure compliance with an Agreement is not a legal obligation to do so. We see no evidence that the City had

9

an affirmative policy of ensuring that its sidewalk cafe permit holders operated their permitted premises in a safe manner. The record thus does not support the court of appeals' determination that Quinlan raised a fact issue on whether the City negligently implemented such a policy.

Quinlan relatedly argues that the City's ultimate "control" over the sidewalk cafe under the Agreement alters this analysis by imposing a duty on the City to maintain the premises. We disagree. Whether a governmental entity controlled the premises is relevant to the merits of a cause of action premised on the Tort Claims Act's waiver of immunity for premises-liability claims. *See County of Cameron v. Brown*, 80 S.W.3d 549, 556 (Tex. 2002). But that is a separate inquiry from whether the Act's discretionary-function exception applies. Again, that exception expressly excludes claims from the Act's immunity waiver when those claims are based on either (1) a governmental unit's failure to perform an act that it is not required by law to perform or (2) the unit's decision not to perform an act if the law leaves performance of the act to the unit's discretion. *See* TEX. CIV. PRAC. & REM. CODE § 101.056. An entity's "control" of the relevant premises does not foreclose application of the exception. *See Johnson*, 572 S.W.3d at 670–71.

Finally, Quinlan's and the court of appeals' reliance on an apparent distinction between the City's initial permitting decisions—which they characterize as immune discretionary design decisions—and the City's later decision not to compel Güero's to install a railing or warning sign—which they characterize as a non-immune maintenance decision—is misplaced. *See* 2022 WL 261569, at *5. In *Johnson*, we recognized that a "sharp line between 'design' and 'maintenance,' under

10

which anything on the 'maintenance' side of the line is not covered by the discretionary function exception," is not supported by the statutory text. 572 S.W.3d at 665–66. Instead, a "design" versus "maintenance" analytical rubric is useful only to the extent to which it helps distinguish between discretionary and nondiscretionary government decisions. *Id.* The key inquiry here is whether the City had a legal obligation to compel Güero's to install a railing or warning sign, not whether the decision to do so would more accurately be characterized as design or maintenance. As discussed, the record is devoid of evidence that the City had an affirmative obligation to monitor the safety of the sidewalk cafe.

## 2. The Transportation Code

Nevertheless, Quinlan argues that municipalities have a nondelegable duty under Chapter 316 of the Transportation Code to protect the public from sidewalk cafes with dangerous conditions. In her view, the nondelegable nature of this duty compels us to read the Agreement as creating a policy by which the City would fulfill its nondiscretionary obligation to monitor how restaurants like Güero's operate their sidewalk cafes. We disagree. The relevant provisions of the Transportation Code, properly construed, do not support Quinlan's position.

We interpret statutes by looking to their plain language and construing the text in light of the statute as a whole. *Miles v. Tex. Cent. R.R. & Infrastructure, Inc.*, 647 S.W.3d 613, 619 (Tex. 2022). To that end, we give statutory terms their common, ordinary meaning unless either the text provides a different definition or the common meaning leads to an absurd result. *Id.* We may not impose our own judicial

11

meaning on a statute by adding extra-textual words or requirements. *Id.* That said, we do not interpret statutes in strict isolation; rather, we interpret the statute's words with reference to the Legislature's broader statutory context. *Id.* We give effect to all the statute's words without treating any language as surplusage, if possible. *Hlavinka v. HSC Pipeline P'ship, LLC*, 650 S.W.3d 483, 491 (Tex. 2022).

Chapter 316 of the Transportation Code provides comprehensive regulations governing a municipality's process for permitting the "[u]se of municipal streets and sidewalks for public conveniences and amenities or for private uses." TEX. TRANSP. CODE ch. 316.[5] Subchapter A applies to certain enumerated "public conveniences and amenities," including sidewalk cafes, and provides a detailed framework under which municipalities may allow property owners or lessors "to use property in the municipality on which a municipal street is located" to establish or maintain the specified improvements. *Id.* § 316.002; *see generally id.* §§ 316.003–.010. Before authorizing such an improvement, the municipality must find that (1) it will not be located or extend upon the roadway or a part of the sidewalk needed for pedestrian use; (2) it "will not create a hazardous condition or obstruction of vehicular or pedestrian travel"; and (3) its design and location "includes all

---

[5] A "municipal street" is "the entire width of a way held by a municipality in fee or by easement or dedication that has a part open for public use for vehicular travel." TEX. TRANSP. CODE § 316.001(1). It includes both the "roadway"—"the portion of a municipal street that is improved, designed, or ordinarily used for vehicular travel"—as well as the "sidewalk"—"the portion of a municipal street between the curb lines or lateral lines of a roadway and the adjacent property lines that is improved and designed for or is ordinarily used for pedestrian travel." *Id.* § 316.001(2)–(3).

reasonable planning to minimize potential injury or interference to the public in the use of the [roadway or sidewalk]." *Id.* § 316.003. Further, the municipality may, by ordinance, establish a permit program governing the establishment and maintenance of such improvements. *Id.* § 316.004.

Subchapter B consists of a lone provision, Section 316.021, and applies to the use of a municipal street or sidewalk for a "private purpose" as distinguished from the "public conveniences and amenities" described and governed by Subchapter A. *See id.* § 316.021. Section 316.021 provides:

> A municipality may permit and prescribe the consideration and terms for the use of a portion of a municipal street or sidewalk for a private purpose if the use does not:
>
> (1) interfere with the public use of the street or sidewalk; or
>
> (2) create a dangerous condition on the street or sidewalk.

*Id.*

The City established a permit program for sidewalk cafes under Subchapter A, and Quinlan does not assert that the City failed to comply with any of the program's requirements, including making the finding that the sidewalk cafe at issue would not create a hazardous condition when the permit was issued and renewed. Instead, Quinlan relies on Section 316.021's restriction on permitting private use of a municipal street if it "create[s] a dangerous condition on the street or sidewalk." *See id.* Given Chapter 316's structure, Section 316.021 does not appear to apply at all to the enumerated uses governed by Subchapter A's much more detailed provisions. But even taking Section 316.021 into account,

13

it must be viewed in the context of the chapter as a whole.[6]  The provisions in Subchapter A prescribe what a municipality must and may do in allowing the covered uses, and, again, there is no argument that the City violated any of those provisions.

Further, Quinlan's position that Section 316.021 creates a nondelegable, nondiscretionary duty renders at least one of Subchapter A's specific provisions largely nugatory.  For example, the Code provides that granting a sidewalk cafe permit does not "impair the right of a municipality . . . to abate an unlawful obstruction or use of a municipal street."  *Id.* § 316.009.  Such a provision expressly allowing cities to remove obstructions is superfluous if, as Quinlan argues, those cities already have a nondelegable duty to remove obstructions under Section 316.021.  *See Hlavinka*, 650 S.W.3d at 491 ("We give effect to all included words without treating any language as surplusage, if possible.").

In short, the Transportation Code allows municipalities to delegate the maintenance of sidewalk cafes to permit holders, and the jurisdictional facts pled here indicate that the City did so.  And because neither the Agreement nor any city ordinance legally obligated the City

---

[6] Even looking at Section 316.021 in isolation, that provision imposes a condition on a municipality's right to *permit* the private use of a municipal street or sidewalk.  More specifically, municipalities may not permit the private use of municipal streets and sidewalks if the private use will create a dangerous condition.  So, under Section 316.021, the City could not issue Güero's a sidewalk cafe permit—or renew that permit—if the restaurant's proposed private use would create a dangerous condition on the street or sidewalk.  And again, Quinlan does not assert that the City improperly issued or renewed the restaurant's permit.

to intervene, the City's decision not to do so was a discretionary act for which the City remains immune. *See* Tex. Civ. Prac. & Rem. Code § 101.056.

## C. Disposition

Because the City is immune from Quinlan's remaining claims as pled, we must determine whether to dismiss those claims or remand to the trial court to give Quinlan an opportunity to replead. "When a plaintiff fails to plead facts sufficient to demonstrate the trial court's jurisdiction, courts generally should afford the plaintiff the opportunity to replead unless 'the pleadings affirmatively negate the existence of jurisdiction.'" *Fraley v. Tex. A&M Univ. Sys.*, ___ S.W.3d ___, 2023 WL 2618532, at *7 (Tex. Mar. 24, 2023). But when a governmental entity asserts immunity and the plaintiff fails to allege or show facts demonstrating a waiver of immunity after having a reasonable opportunity to conduct discovery directed to the issue, the case is appropriately dismissed. *Tex. Dep't of Crim. Just.–Cmty. Just. Assistance Div. v. Campos*, 384 S.W.3d 810, 815 (Tex. 2012).

The City filed its original plea to the jurisdiction nearly two years after Quinlan filed suit. Nearly six months later, Quinlan amended her petition for the fourth time in response to the City's plea. Quinlan's fourth amended petition differs from her third only in that it adds her negligent-implementation-of-policy claim. But as we outline above, Quinlan cannot establish that the Legislature has waived the City's immunity from that claim.

The City's initial plea to the jurisdiction, filed approximately nineteen months after the start of the discovery period, placed Quinlan

15

on notice that her claims were subject to the discretionary-function exception to the Tort Claims Act. *See Fraley*, ___ S.W.3d at ___; 2023 WL 2618532, at *7. She was given the opportunity to replead and did so, but she did not allege facts overcoming that exception. *See id.* Accordingly, we conclude that dismissal is appropriate.

### III. Conclusion

We hold that Quinlan has failed to plead a claim against the City for which the City's immunity is waived. Accordingly, we reverse the court of appeals' judgment in part and dismiss the remaining claims for lack of jurisdiction.

Debra H. Lehrmann
Justice

**OPINION DELIVERED:** June 2, 2023

16